Argued 13 February; decided 27 March, 1899.

## AMBROSE *v.* HUNTINGTON.

[56 Pac. 513.]

1. SUFFICIENCY AND EFFECT OF ADVERSE POSSESSION.—Enclosing a tract of land and continually using it under color of title and claim of right constitute such an adverse possession as will start the statute of limitations, and, if continuous for the required time, will confer title, at least as between individuals: *Joy* v. *Stump*, 14 Or. 361, cited.

2. PUBLIC LANDS—RATIFICATION OF AGENT'S ACT.—County school superintendents are not the agents of the state to execute deeds to its school lands, but the state ratifies and becomes bound by their contracts to convey such lands when it accepts and retains the purchase price.

3. STATUTE OF LIMITATIONS—ADVERSE POSSESSION—BOND FOR DEED.—Where a vendee has gone into possession of land under a contract to purchase, his holding is adverse to the vendor from the time he complies with his part of the agreement, and the same rule applies to the state as to a natural person: Hill's Ann. Laws, § 13, and *Anderson* v. *McCormick*, 18 Or. 301, cited.

4. IDEM.—A deed to land as to which an adverse possession against the grantor has ripened into title is ineffectual for any purpose.

5. REAL PROPERTY—EFFECT OF NOTICE BY OCCUPATION.—The open, notorious and exclusive possession and occupancy of real property by a stranger to the title puts a purchaser from a third person upon notice and inquiry concerning the rights and equities of the party in possession, and charges him with all the knowledge that he might have obtained upon reasonable inquiry: *Exon* v. *Dancke*, 24 Or. 110, followed.

From Douglas :    J. C. FULLERTON, Judge.

Suit by A. T. Ambrose against Benjamin Huntington to quiet title to certain lands.   Plaintiff appeals from a decree against him.

REVERSED.

For appellant there was a brief and an oral argument by *Messrs. Wm. R. Willis* and *Andrew M. Crawford*.

For respondent there was a brief over the name of *J. W. Hamilton*, with an oral argument by *Mr. Frank W. Benson*.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This is a a suit to quiet title to the west ½ of the southwest ¼ of section 16, township 23 south, range 5 west, in Douglas County, Oregon.   After denying the material allegations of the complaint, which are in the usual form, the defendant alleges ownership and possession of the premises, and sets up his muniments of title thereto— in effect, that the State of Oregon conveyed the same to Joseph Durbin on March 15, 1892, and he to the defendant on May 20, 1895.   He further alleges that at the time of his purchase from Durbin he had no notice or know-

ledge as to plaintiff's claim of title, and was, therefore, an innocent purchaser for value. The decree of the court below was for defendant, and plaintiff appeals.

It is shown by the testimony that on February 8, 1866, E. A. Lathrop, County School Superintendent of Douglas County, Oregon, sold the land in question to plaintiff for the consideration of $160, of which he paid one-fourth down, and executed and delivered to that officer his three promissory notes, for $40 each, for the balance of the purchase price, payable in one, two, and three years after date, with interest at ten per cent. per annum, payable semi-annually. The two notes payable latest in time were written upon one sheet of paper, and indorsed as follows : "June 17, 1867. Received payment in full on within notes. Andrew Jones, County Treasurer." These notes were given in evidence by the plaintiff, who says he believes he paid the other note, but does not remember distinctly. He further testifies, in substance, that he procured a bond for a deed to the land, and sent the same, with some deeds which had been executed and delivered to him by the county school superintendent of said county, to a party in Salem by the name of John Godell, for the purpose of obtaining a confirmatory deed from the state for the lands described therein ; that he soon after received a deed from the state, bearing date March 22, 1881, which he had recorded September 18, 1883, but the premises conveyed thereby are described as "the northeast quarter of southwest quarter, the northwest quarter of southeast quarter, and lots four, five, six, eight, and nine, of said section sixteen," and, of course, do not include the land in dispute ; that he did not become fully aware of the error until defendant began to claim the land ; and that he never believed the deed from the state described all the land purchased by him.

It is further shown that the plaintiff went into posses-

sion in 1866 ; that he inclosed the land in dispute, with
his other lands, in 1868 ; and that he has maintained
the inclosure ever since, with some few intermissions,
when portions of the fencing broke down through decay
or were destroyed by fire.    The evidence upon the sub-
ject is somewhat voluminous and not a little conflicting ;
but it sufficiently appears therefrom that the land in
question lies in a mountainous region, fit only for pas-
turage ; that the plaintiff entirely inclosed it in 1868,
with other lands of his, by a substantial fence consisting
of rails, logs, and brush, and, it may be, at some parts it
was joined to natural obstructions ordinarily sufficient
to turn stock ;    and that, considered as a whole, the
fencing was of the nature usually employed in districts
of that character.    At some points it was constructed
somewhat off the line, and included some three acres of
railroad land, and five or six acres of land belonging to
Mr. Long.    This fact, however, is not material, as the
other land inclosed was inconsiderable, and the fencing
may be said to have been placed substantially upon
boundary lines, except where it was built entirely upon
and through plaintiff's land.    Plaintiff thereafter used
and employed the land thus inclosed for pasturing his
sheep and other stock, and has had it in possession and
use for that purpose ever since.    The fencing may have
been maintained indifferently at periods, but the plain-
tiff has renewed it from time to time, and practically
kept it in such a condition as to form a substantial in-
closure, up to the time that defendant asserted title
thereto ; and during all the while plaintiff claimed the
entire ownership and title to the land, and so occupied
it, in exclusion of all others.    The defendant, to prove
his title, introduced a deed from the State of Oregon to
Joseph Durbin, bearing date March 15, 1892, and one
from Durbin to himself, of date May 20, 1895.    Further

than this, it is shown, practically, that plaintiff paid the taxes upon the land until 1892, and thereafter defendant paid them.

Several questions of legal import are presented by the record. It is insisted that plaintiff was not in possession at the commencement of the suit, and, of course, if such was the case, he could not maintain it; but, in our view, the testimony is quite sufficient to establish actual possession on his part at the time. The defendant claims to have been in possession, but the only act shown which would indicate it is that he went upon the land a short time before suit was begun, and posted notices thereon warning people to keep off the same, and notifying them that he was the owner of the property. Otherwise, he had neither actual nor constructive possession.

1.  Another contention is that plaintiff's possession was not of such a nature as to render it adverse. We think otherwise. It was, from its inception, actual and under color of title. The maintenance of a substantial inclosure, and the continued use and occupation of the land for pasturage of stock (the only purpose for which it was adapted), under claim of right and title, constituted such a visible, open, notorious, distinct, exclusive, and hostile possession as to set the statute of limitations running, and, if continuous during the full period contemplated by the statute, would operate to confer title, at least as between individuals, where the state is not concerned: *Joy* v. *Stump*, 14 Or. 361 (12 Pac. 929); *Worthley* v. *Burbanks*, 146 Ind. 534 (45 N. E. 779).

2.  It may be observed, in passing, that the county school superintendent was not the agent of the state, with power to execute a deed to its school lands; but, as he had contracted to convey the same, and the state had received, accepted, and retained the purchase price, it thereby became bound to the observance of his con-

tracts regarding the land, as it operated as a ratification of his acts in the premises (Mechem, Agency, §§ 148, 149), so that there was substantially a contract on the part of the state with plaintiff to convey to him the premises in dispute.

3. But the question of vital importance is whether the statute of limitations began to run in favor of plaintiff and against the state at any time while it held and retained the legal title. The testimony is a little meager touching the bond and its terms relative to the time when the plaintiff became entitled to his deed; but it may be inferred that he became entitled thereto at the time when the purchase price was fully paid, or, at any rate, at the time he sent the bond to Salem for the purpose of obtaining a confirmatory deed. It may be said that its obligation to make this conveyance became matured and fixed, by full performance on plaintiff's part, not later than March 22, 1881, which was the date of his deed from the state containing the wrong description. It is a rule of law, now uncontroverted, that where the vendee, under a contract or agreement to purchase land, has executed or performed the agreement on his part by full payment of the purchase money, his possession from that time becomes adverse to that of the vendor, having gone into possession primarily under the agreement: *Anderson* v. *McCormick*, 18 Or. 301 (22 Pac. 1062); 2 Wood, Lim. § 260; *Ridgeway* v. *Holliday*, 59 Mo. 444; *School District* v. *Blakeslee*, 13 Conn. 227; *Catlin* v. *Decker*, 38 Conn. 262. There was here, then, a subsisting and binding contract on the part of the state to convey to the plaintiff the land in dispute; and it would seem that, if it had brought an action to recover possession, the contract would have been a complete defense on the part of Mr. Ambrose. Such being the case, there was such a possession and claim of title as set the statute

of limitations running against the state: Hill's Ann.
Laws, § 13; *Richards* v. *Griffith*, 1 Kan. App. 518 (41
Pac. 196).

4. The continuous maintenance of such adverse pos-
session under claim of title from 1881 until the time suit
was instituted (a period of time much longer than ten
years), in view of the contractual relations alluded to,
operated to invest the plaintiff with a perfect title, even
prior to the execution and delivery of the deed by the
state to Durbin; and the latter, therefore, acquired no
title to the land in dispute by virtue of such deed.

5. Touching the question of good faith, it is settled
that an open, notorious, and exclusive possession and
occupancy of real property by a stranger to the title is
sufficient to put a purchaser from another upon notice
and inquiry concerning the rights and equities of the
party in possession, and will charge him with all the
knowledge that he might have obtained upon reasonable
inquiry: *Petrain* v. *Kiernan*, 23 Or. 455 (32 Pac. 158);
*Bohlman* v. *Coffin*, 4 Or. 313; *Exon* v. *Dancke*, 24 Or.
110 (32 Pac. 1045).

We are impelled, therefore, under the facts pertaining
to this controversy, to impute to the defendant full notice
and knowledge of the plaintiff's right and title to the
land at the time he purchased of Durbin, and hence con-
clude that he could not have been an innocent purchaser
for value. He was fully aware of the plaintiff's posses-
sion, and of his claim of right and title to the premises
long prior to the time he obtained the deed from Mr.
Durbin. This is manifested from the fact that some
eight years prior to the commencement of this suit he
was employed and paid by the plaintiff for his services
in building a fence along the west boundary line of the
land in dispute and upon the line between it and the
lands now owned by him. He has lived in the neighbor-

hood for a number of years, and was fully cognizant of plaintiff's claim of ownership of the premises.   It seems to have been common reputation among persons living in the neighborhood that plaintiff was the owner and in full and complete possession of the land for many years. In pursuance of these considerations, the decree of the court will be reversed, and one here entered in accordance with the prayer of the complaint.

REVERSED.