Argued October 15, decided October 22, 1912.

## LAIS *v.* SMITH.

(127 Pac. 26.)

**Adverse Possession—Requisites—Actual Occupation.**

1. Where entry is not made under color of title, title can be adversely acquired only on the ground actually occupied. The possession must be visible, hostile, and exclusive, and cannot extend beyond the limits of actual occupation.

**Adverse Possession—Indicative Claim.**

2. Adverse holding of real property must be indicated by some acts of use to which the land is adapted, as the construction of buildings thereon, cultivation or substantial inclosure thereof, indicating an occupancy coterminous therewith, exclusive in character.

**Adverse Possession—Location of Land—Quantity—Proof.**

3. Where defendant's evidence of adverse possession of certain land consisted of estimates of guesses as to the quantity and location of the land and his inclosure included only ground cultivated, which was a small portion of the amount claimed, it was insufficient to sustain the claim.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

The controversy in this case arises in a proceeding by J. G. Lais to register the title to real property under Section 7179 *et seq.*, L. O. L., in which it is alleged that the defendant, W. R. Smith, claims an interest or estate in a portion of the real property described in the application. Smith, answering, alleges ownership acquired by adverse possession of 10.3 acres of land in the northeast corner of the southeast quarter of section 29, township 7 south, range 1 east, Willamette meridian, which he describes by metes and bounds. There is but little contorversy as to the principal facts, namely: That in March, 1885, the defendant made a homestead entry upon the southwest quarter of section 28, township 7

south, range 1 east, Willamette meridian, and at that time commenced making his improvements, which, by mistake as to the location of the west line of the homestead, he placed upon a portion of the 10.3-acre tract in controversy, and inclosed the same with a fence, and has occupied the portion so inclosed since said time until the year 1909, claiming it as a part of his homestead; that in May, 1909, the defendant sold his homestead to the applicant, Lais, in this proceeding. Findings were made and decree rendered by the circuit court in favor of plaintiff upon the ground that the defendant's holding was not adverse, and defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. John H. McNary, Mr. Charles L. McNary,* and *Mr. Walter L. Spaulding,* with an oral argument by *Mr. Spaulding.*

For respondent there was a brief over the names of *Messrs. Rauch & Seitz,* with an oral argument by *Mr. Maurice W. Seitz.*

Opinion by MR. CHIEF JUSTICE EAKIN.

Without determining the sufficiency of defendant's adverse holding to constitute a legal title, we find upon reading the evidence that defendant is not entitled to any relief, even if the facts proved establish adverse possession of some part of the tract.

1. Title by adverse possession where the entry was not made under color of title can be acquired only to the ground actually occupied. The possession must be visible, hostile, and exclusive, and cannot be extended beyond the limits of the actual occupation. *Joy* v. *Stump,* 14 Or. 361 (12 Pac. 929).

2. The adverse holding must have been indicated by some such acts of use as the land was adapted to—as the construction of buildings thereon, cultivation, or a

substantial inclosure, indicating an occupancy coterminous therewith—and it must have been exclusive in character. *Hamilton* v. *Fluornoy*, 44 Or. 98 (74 Pac. 483).

3. In the answer he describes the tract he is contending for by courses and distances, the description evidently having been prepared by a surveyor, which clearly includes much more land than that within his inclosure. On what theory he makes his description extend to the middle of the creek, and up the middle of the creek south to its intersection with the section line, does not appear in the evidence; but there must have been some ulterior motive. Defendant's testimony shows that his inclosure was not co-extensive with the description contained in the answer. He says: "I put a fence around all of that property." (In 1886.)

"A rail and post fence around the lower side of it along the course of Silver Creek to a point on the southwest side of this piece; thence I went practically due north to a certain point on the mountainside; thence practically east or an easterly direction to a point on the north side of my homestead, connecting with the fences there."

The plat (defendant's Exhibit B), upon which some fence is indicated, marks a fence on the north extending west into the creek, and shows no fence inclosing the south end of the tract, and is misleading as to the location of the fence on the west. The description in the answer gives the north boundary, except the last two calls, as along a fence. Defendant testifies that a portion of the north line has no fence, but is protected by a bluff. He further testifies that he had five or five and one-half acres in cultivation. The rest of it was in brush and timber. Again, in answer to the following question, he says:

"Q. Now this fence that you built, did that at any time include all of this 10.3 tract?

"A. With the exception of a little right along the north bank of the creek, on the south side of this land. There is a little piece there, piece of five or six rods where the bluff is fifty or sixty feet perpendicular, doesn't need any fence."

This evidence is not convincing that he had any considerable portion of the tract described inclosed, or what portion of it was inclosed. Walter Smith, defendant's son, says:

"We had a rail and brush fence. Part way around we had a brush fence; cut down brush and made a fence on the creek side. The other side we had a rail or worm fence.

"Q. How much of the place was fenced?

"A. I should judge we fenced about six or seven acres, about six acres under fence. No fence around the upper part because we weren't able to fence it—too steep."

Lichty, a witness for the applicant, testifies that there was no fence only around the piece that was grubbed, about a couple of acres. Shively, also applicant's witness, testifies to the same effect—that there was a fence on the west side of this strip of oats, about one and one-half acres. This evidence consists of estimates and guesses as to the quantity and location of the land upon which defendant seeks to establish a fee-simple title to a definite tract of land. Taking the testimony as a whole, it appears that the inclosure included only the ground cultivated, and evidently inclosed but a small portion of the amount now claimed. It does not appear that the inclosure reached to the center of the creek. Defendant has not established title to the tract claimed or any part of it that can be made the subject of a decree. The tract in question is embraced in the description of the property to which the applicant has the record title, and he is entitled to a decree quieting his title thereto.

Decree affirmed.                              AFFIRMED.