Argued July 8, reversed and decree entered July 31, rehearing denied September 14, 1920.

# SEAVEY *v.* WILLIAMS.*

(191 Pac. 779.)

**Deeds—Exception Void for Uncertainty.**

1. An exception of about 12 acres in a section lying south of a river is void for uncertainty, where there were more than 100 acres lying south of the river, and, the exception not being described to a certainty, the title to the whole tract passes, the exception alone being void.

**Adverse Possession—Where Exception Void, Grantee had "Color of Title" to Entire Tract.**

2. Where an exception of part of a parcel of land conveyed was void, the grantee has color of title to the entire parcel described; "color of title" being that which in appearance is title but which is no title.

**Adverse Possession—Where Banks of River were Steep, They will be Treated as "Fence."**

3. Under Section 5770, subdivision 7, L. O. L., providing that all precipices, embankments, streams, lakes, and other natural obstruction, if equally secured against the trespass of domestic animals, shall be treated as lawful fences, a river on which the land claimed adversely abutted will be treated as a lawful "fence" for the purpose of determining whether plaintiff who inclosed the other sides fully inclosed it.

**Adverse Possession—Plaintiff Held to have Acquired Title to Land by Adverse Possession.**

4. Where plaintiff, who owned land bounded by a river and had color of title to land on the opposite side, built a bridge so as to enable his stock to cross over and pasture on such land, which was the only use for which it was fit, such possession for the statutory period will ripen into an adverse title, notwithstanding that, after some years' possession, a road was cut through plaintiff's fence and other stock occasionally strayed on the land.

---

*On notice of title to land from inclosure, see note in 13 L. R. A. (N. S.) 779.                                                    REPORTER.

From Lane: GEORGE F. SKIPWORTH, Judge.

Department 2.

This is a suit to quiet title to about 30 acres of land in Lane County, described in the complaint as follows:

"Beginning at a point on the south line of section 12 in township 18 south of range 3 west of the Willamette Meridian 6.25 chains north 88 degrees 51 min. west of the southeast corner of said section, thence north 88 degrees 51 min., west 23 chains to the center of the old channel of the Coast Fork River; thence along the said center north 30 deg. 22 min. east 7.49 chains; thence north 49 deg. 21 min. east 25 chains more or less to the center of the present channel of the Coast Fork River; thence south 0 deg. 44 min. east 23.30 chains to the place of beginning, containing 30 acres of land in section 12, township 18, S. R. 3 W. W. M."

The plaintiff alleges that he and his predecessors in interest, through whom he deraigns title, have been in the visible, open, notorious, hostile, continuous, and adverse possession of the premises, under a claim of ownership and title, for more than twenty years. The complaint is in the usual form.

The defendants admit that they claim an interest or estate in and to about 20 acres of the land described in the complaint, a particular description of which is contained in the answer, and plead title to and ownership of that portion. They deny all other material allegations of the complaint. The answer is traversed by the reply.

Testimony was taken, and the court found that in 1904 the plaintiff and James and Jesse Seavey purchased the land described in the complaint from George C. Simon, and that in January, 1908, the plaintiff acquired the interest of James and Jesse

Seavey.    Other findings were to the effect that in June, 1904, the plaintiff built a fence around a portion of the land, inclosing it with about 2,000 acres of other property which he owned; that there was no fence inclosing the land in dispute, along the coast fork of the Willamette River; that during the dry season plaintiff's stock could pass across the river from his other premises to the land in controversy; that the tract in question was entirely covered with brush and timber up to and including the year 1913, when there was some wood cut on the premises; that the land was used by the plaintiff for pasturing stock from time to time; that in 1912 there was a county road located through a portion of it, which in 1913 was opened for travel; that in the location of the road a portion of the fence was torn down; that in June, 1913, stock belonging to Johnson, Chapman, and Hayes passed through such opening to and upon the land claimed by the plaintiff; that there was no obstruction to prevent their stock from going upon the land from the road; and that by reason thereof the land remained open from June, 1913, until January, 1915, at which time Barr built a fence along the road, inclosing the land claimed by plaintiff.    It was further found that the plaintiff used the land in dispute from 1904 until June, 1913, for pasturing his stock; that after the fence was torn down he continued to pasture his stock upon the property from time to time; that it was so used by other owners of stock from June, 1913, to January, 1915; that the plaintiff did not have any title or color of title to the land described in the answer; that his possession was from January, 1904, until June, 1913, only; and that he was not in continuous, open, notorious, and exclusive possession of the premises described in the

complaint, under a claim of right, for the period of ten years.

Based upon these findings, the court rendered a decree declaring the defendants to be the owners of the land described in their answer and quieting the plaintiff's title to the remainder of the 30-acre tract only. The plaintiff appeals.

REVERSED. DECREE ENTERED.

For appellant there was a brief over the name of *Mr. O. H. Foster,* with oral arguments by *Mr. Foster* and *Mr. E. O. Potter.*

For respondents there was a brief with oral arguments by *Mr. C. A. Hardy* and *Mr. J. M. Devers.*

JOHNS, J.—The 30-acre tract claimed by the plaintiff is in the form of a triangle, and the 20 acres to which the defendants claim title form substantially another triangle. Although the boundaries are not identical, all of the latter tract, except very small fractions on the south and east, lies within the 30 acres.

1. The plaintiff's record title was acquired in January, 1904, by a warranty deed from George C. Simon, which conveyed, among other lands, all of the east half of section 12, "except about twelve acres lying south of the Coast Fork River." It appears that Simon obtained his title from Elizabeth Shannon by a conveyance on October 15, 1899, in which the 12-acre exception is in the same words used in the deed to the Seaveys. It is shown by the defendants' map that there are more than 100 acres in the east half of section 12 which lie "south of the Coast Fork River." Under such a state of facts and in the absence of allegation or proof as to which particular 12 acres

were meant or understood to be excepted, as between the grantor and the grantee in particular, the exception would be void for uncertainty. The rule is thus stated in 8 R. C. L.:

"In short, by an exception some part is excluded from the conveyance and remains in the grantor by virtue of his original title, while a reservation creates a new right out of the subject of the grant and is originated by the conveyance": Page 1090.

"The rules of construction applicable to grants apply also to an exception therefrom, from which it follows that the words of exception must be as definite as those necessary to convey a title": Page 1096.

"If an exception is not described to a certainty, the grantee shall have the benefit of the defect. * * If the description of the exception is void for uncertainty, the title to the whole tract passes, the exception alone being void": Page 1097.

Under the last-quoted excerpt, the text cites *Loyd v. Oates,* 143 Ala. 231 (38 South. 1022, 111 Am. St. Rep. 39); *Lange* v. *Waters,* 156 Cal. 142 (103 Pac. 889, 19 Ann. Cas. 1207); *Attebery* v. *Blair,* 244 Ill. 363, (91 N. E. 475, 135 Am. St. Rep. 342). Those authorities sustain the rule stated.

2. As the 12-acre exception is void for uncertainty, it must follow that on January 30, 1904, the plaintiff received a warranty deed which purported to convey the property described in the complaint; that it was based upon a like conveyance previously executed to his grantor by Elizabeth Shannon; and that such deeds were sufficient to give the plaintiff and his grantor color of title to the lands described in the complaint, from and after October 15, 1899. In *Swift* v. *Mulkey,* 17 Or. 532 (21 Pac. 871), this court held:

"Color of title is that which in appearance is title, but which is no title. A claim to property under a

conveyance, however inadequate to carry the true title to such property, and however incompetent may have been the power of the grantor in such conveyance to pass title to the subject thereof, yet a claim asserted under the provisions of such a deed is strictly a claim under color of title, and one which will draw to the possession of the grantee the protection of the statutes of limitations, other requisites of those statutes being complied with.''

The facts tend to show that the 12-acre exception is not a part of the land described in the complaint. On April 24, 1861, Lewis S. Coryell and Mahala Coryell deeded a tract of land containing 37.72 acres to Andrew J. Keeney, through whom the defendants claim title, and in 1889 Keeney and his wife conveyed to Harms a portion of that tract, consisting of 21.53 acres. By reference to the plats introduced in evidence, it will be found that about 12 acres of the land deeded to Harms are in the east half of section 12, south of the coast fork of Willamette River; and it is possible, even probable, that the 12-acre exception refers to that portion of the Harms tract. The plats also show that exclusive of the tract in dispute the plaintiff owned much more land on the south side of the river, all of which was fenced in with the 30-acre tract in June, 1904. Again, outside of any record title which they may have as heirs of Keeney, there is no evidence which tends to show that the defendants or their ancestors ever owned or claimed to own any portion of the land here in dispute, after Keeney executed his deed to Harms, that it was ever assessed to them or that they ever paid any taxes on it.

3, 4. The property in controversy was wild, unimproved land remaining in its original state, covered with brush and timber. In June, 1904, the plaintiff constructed a substantial fence around all of that

portion thereof not bounded by the river channel, and since that time he has used it for pasturing stock, the only purpose to which it is suited. The testimony shows that during all of this time the plaintiff owned about 2,000 acres of land; that a large portion of it, on which he resided and had his improvements, lay along the other side of the river, away from the tract in dispute; and that he constructed a bridge across the river, which he used for transferring his stock from one side to the other. During high water, for safety, it was necessary to remove the stock from the south side of the river to the north side, and, among other things, the bridge was used for that purpose. It also appears that when the river was low there were places in it where plaintiff's cattle and other stock could cross without using the bridge, but there is no testimony that they ever did so. Along most of plaintiff's property the river banks were high and steep and formed a barrier sufficient to prevent stock from entering from the river, for which purpose they served as a fence. Section 5770, subdivision 7, L. O. L., provides:

"That all precipices, embankments, streams, lakes, ponds, or other natural obstruction, if equally secure against the trespass of any domestic animals, or shall be made so by artificial means, shall be deemed lawful fences."

On this subject, we quote the following from 1 R. C. L., page 699:

"It is no objection that natural barriers are taken advantage of in constructing the inclosures, providing they are not out of proportion to the artificial barriers erected. If the natural, together with the artificial, barriers used, are sufficient clearly to indicate dominion over the premises, and to give noto-

riety to the claim of possession, it is sufficient to put the statute of limitations in motion.''

As the plaintiff owned lands on both sides of the river for a considerable distance up and down the stream, it must follow that the only means of access to his premises from the river by outside stock would be at the upper and lower points where plaintiff's lands were crossed by the stream. Under the facts shown to exist here, we hold that the banks of the river were ''fences'' within the meaning of Section 5770, subdivision 7, L. O. L.

It is manifest that anyone going upon the lands would see that they were all inclosed in one large tract; that the property on the south side of the river was connected with that on the north by means of a bridge; and that along with his other property the disputed tract was used by the plaintiff for pasturing stock whenever weather conditions would permit.

There was no real controversy over these matters up to the time the county road was laid out and opened on the south side of the tract in question, some time in 1913. A map introduced in evidence shows that this road enters the lands described in the answer at a point below the southwest corner of the 30-acre tract; that it crosses the south boundary of that tract about the middle thereof; and that the southeast corners of the two pieces of land are practically identical. The map shows that about three-fourths of the county road is upon the south boundary of the lands of the defendants in which the plaintiff does not have or claim any interest, outside of the boundaries of the 30-acre tract, and that about one fourth of the road only is upon that tract and with the boundaries of the lands which both parties claim. There is evidence that in the opening of the road the plain-

tiff's fence was cut and partly removed, that by reason thereof some stock entered upon his premises, but that all other parts of the fence remained intact as constructed. The testimony is conclusive, and the court found, that the plaintiff continued to use the disputed land for pasturing stock after the county road was opened, in the same manner as before it was located.

J. C. Johnson, as a witness for the defendants, testified that after the county road was opened in 1913, at intervals a cow and a pony of his pastured on the disputed land; that at different times two cows belonging to Hayes pastured there; and that a man named Chapman may have had some stock there, although Johnson did not know how many head. Asked, "All there was to it, there were just two holes in that fence?" the witness answered, "There were two holes where they could get through." Assuming all that to be true, the few cattle and horses which ran there were nothing more than roaming stock. Their pasturing on the land and the cutting of the fence form the only evidence tending to show that the plaintiff did not have continuity of possession for more than ten years, the length of time required to perfect title by adverse possession.

In *Joy* v. *Stump,* 14 Or. 361, 364 (12 Pac. 929, 930), this court said:

"When a person goes into the possession of land under color of title duly recorded, in which the boundaries of the lot or tract are defined, this operates as constructive notice to all the world of his claim, and also of its extent, so that a sufficient occupancy of a part of the lot carries with it, by construction, the possession of the entire premises described by his conveyance, when the boundaries are well defined. * *

"It is equally well settled that, when a person relies upon naked possession as the foundation for an adverse claim, there must be an actual occupancy and the possession cannot be extended * * beyond the limits of the actual occupation, and such possession must not only be actual, but also visible, continuous, notorious, distinct, and hostile, and of such a character as to indicate exclusive ownership in the occupant."

This decision was approved in *Ambrose* v. *Huntington,* 34 Or. 484, 488 (56 Pac. 513, 514), where it is held:

"The maintenance of a substantial inclosure, and the continued use and occupation of the land for pasturage of stock (the only purpose for which it was adapted), under claim of right and title, constituted such a visible, open, notorious, distinct, exclusive, and hostile possession as to set the statute of limitations running, and, if continuous during the full period contemplated by the statute, would operate to confer title, at least as between individuals, where the state is not concerned."

We conclude, therefore, that the plaintiff's color of title, considered with his fencing of the land and use of it in connection with his other property in the manner which he used and had possession of it, is sufficient to give him title by adverse possession.

The decree of the Circuit Court is reversed, and one will be entered here in favor of the plaintiff, quieting his title to the lands described in the complaint and quieting the title of the defendants to all that portion of the real property described in their answer which is not a part of or included within the boundaries of the premises described in the complaint. Neither party shall recover costs in this or the Circuit Court.

REVERSED. DECREE ENTERED. REHEARING DENIED.

MCBRIDE, C. J., and BEAN and BENNETT, JJ., concur.