Argued March 2; affirmed October 11, 1949

## VOLCKERS *v.* SEYMOUR

210 P. 2d 484

*Walter T. McGuirk,* of Portland, argued the cause and filed a brief for appellant.

*Mark V. Weatherford,* of Albany, argued the cause for respondents. On the brief were Weatherford & Thompson, of Albany, and G. B. McCluskey, of Toledo.

Before LUSK, Chief Justice, and BELT, ROSSMAN and BAILEY, Justices.

BELT, J.

This is a suit to quiet title to certain land in Lincoln county, Oregon. The complaint describes two tracts. One tract is comprised of the South half of the Northwest quarter of Section 4, Township 11 South of Range 11 West of the Willamette Meridian; also government Lots 3 and 4 in said Section. The other tract is land in the Northeast quarter of Section 5 in said Township and Range, adjoining the first tract and extending to the County road on the west. There is no dispute as to the ownership of the land in Section 4. Plaintiff acquired title to that land by mesne conveyances. The real controversy is over the land in Section 5, and plaintiff claims title thereto by adverse possession. She has no color of title to the same. Reference to the map on the following page will be helpful in understanding the issues.

The land in dispute is rough and mountainous, lying about one mile north and east of the city of Newport. In 1888, plaintiff's uncle and predecessor in title, Carl A. Anderson, settled on the land in Section 4 and acquired a patent thereto in 1891. He carried provisions to his claim on his back. Anderson lived continuously on such premises until his death in 1936, at which time he was 86 years of age. In 1932, Anderson executed a power of attorney conferring authority upon plaintiff to "collect and receive" money due under the terms of a lease covering the Northwest quarter of Section 4. It is significant that in such instrument no reference is made to land in Section 5. One Jeffries filed on the land in Section 5 as a homestead about the same time that Anderson settled on his land. There was never any fence between the Anderson land and that claimed by Jeffries. Each owned cattle that ranged over the land regardless of boundaries. Indeed, much of the land in

-2-

dispute was used as an open range for many years by various owners of livestock.

It is evident that Anderson did not know the exact location of the line between Sections 4 and 5, as he built his cabin on the quarter line as definitely established by subsequent surveys. It is reasonable to assume, however, that he knew the location of the Northwest corner of Section 4, as that point was on the Township line and was well marked. Later, Anderson built a house about 200 feet east of the quarter section line. A barn was erected about 200 feet west of such section line. For several years Anderson enclosed by a rather unsubstantial wire fence two or three acres of meadow land in Section 5 to protect the wild hay from livestock.

■ The county assessor, apparently believing that the buildings were about in the center of Anderson's claim, assesesd them to him. A valuation of $30.00 was placed upon the house. No value was put on the barn and cabin. No assessment of taxes was ever made against Anderson or his successors in interest on land in Section 5. Defendants have always paid taxes on the land in dispute and are the record owners thereof. While payment of taxes is not essential to adverse possession, the failure to pay the same by a person claiming title by adverse possession is important evidence tending to refute such claim. *Phipps v. Stancliff,* 118 Or. 32, 245 P. 508; *Security Savings & Trust Co. v. Ogden,* 123 Or. 370, 261 P. 69; *Reeves v. Porta,* 173 Or. 147, 144 P. (2d) 493. As a general rule, a person pays taxes on that which he claims to own.

■ There is some evidence that Anderson pointed out the County road as being the western boundary of his land, but it is not convincing. After a study of the entire record, we think it is very doubtful that Anderson ever claimed ownership of land in Section 5. It is

certain that he never exclusively occupied the same under a claim of ownership. No person has ever resided on the land in dispute. Anderson simply used part of the meadow land and nobody seemed to care about it. During the lifetime of Anderson, this land had slight value and no great attention was paid to boundary lines. The land was adapted only to the grazing of cattle.

The evidence relative to fences on the land in question is quite vague and indefinite. Illustrative:

"Well, this piece of fence went right from here and out here and up to about here somewhere, right in there where the fence goes."

It is clear, however, that the land in question was not completely enclosed. The fence running north from the Southwest corner of the land in dispute and extending about half way to the northern boundary thereof was not built by Anderson or any of his successors in interest.

The claim of the plaintiff is based almost solely upon what her uncle did. His lips are sealed in death. Plaintiff and her husband reside at Portland, Oregon. They visited this mountain ranch several times in the summer, but there is nothing that they did to establish title by adverse possession.

The law of adverse possession is so well settled in this jurisdiction and elsewhere that we deem it unnecessary to restate it. See *Linn County v. Rozelle,* 177 Or. 245, 162 P. (2d) 150; *Reeves v. Porta,* supra; and authorities therein cited.

The decree that plaintiff is the owner of the Northwest quarter of Section 4 in Township 11 South of Range 11 West of the Willamette Meridian and that she has no right, title or interest to the land in Section 5, as described in the complaint, is affirmed. Defendants are entitled to costs and disbursements.