**PEWITT et al.**

**v.**

**RENWAR OIL CORP. et al.**

No. 6695.

Court of Civil Appeals of Texas.

Texarkana.

June 11, 1953.

Second Motion for Rehearing Denied
Nov. 12, 1953.

James J. Nallin, Longview, Russell & Perkins, Mt. Pleasant, for appellants.

Bowyer, Gray, Thomas, Crozier & Harris, Dallas, Cornelius & Cornelius, Jefferson, McLemore & McLemore, Longview, Bibb & Green, Marshall, Golden, Croley, Howell & Johnson, Dallas, for appellees.

HALL, Chief Justice.

Appellants have filed a vigorous motion for rehearing, asserting, of course, that we have committed many egregious errors in our opinion, to which the motion is addressed. We have carefully re-examined the record during vacation and a great number of the 200-odd authorities cited in their original brief, together with those cited in their motion for rehearing. This study has in nowise affected our conclusion expressed in our original opinion. However, we have decided to re-write our opinion so as to correct some misstatements contained therein and to make certain additions which will clarify it. Therefore, our original opinion heretofore handed down on June 11, 1953, is withdrawn and this opinion is substituted therefor.

This is a suit in trespass to try title and concerns about one acre of land in the southwest corner of the Baldridge 55.64-acre tract of land, a part of the Upper Reuben Bennington Survey, and being that part of the J. & N. W. right of way over the Baldridge tract upon which appellees, under a permit from the Railroad Commission, have drilled a producing oil well. Appellants designate the tract of land as being 44/100 acre of land. Appellants sought to fix their title to this small tract of land under a chain of title from the sovereignty of the soil and under the three, five and ten-year statutes of limitation, Vernon's Ann.Civ.St. arts. 5507, 5509, 5510. Trial was to a jury and upon a verdict favorable to appellees the trial court entered judgment for them.

Appellants' first point is that they "have the record title to the estates and interests in the Baldridge tract for which they sue." The second point is that "no part of the Baldridge tract, within the perimeter description of said tract, was left unpartitioned in cause No. 8,444," and the third point is that "no part of the Baldridge tract within the perimeter description of said tract is excepted from the conveyances from Mrs. H. E. Baldridge and her assigns under which appellants hold title to their estates and interests in said tract." These points will be considered together.

Appellees, as stated in their brief, "claim under the railroad title, and in the alternative, that they have the superior title under the Baldridge chain." They also claim under the five, as respects both land and mineral leasehold, ten and twenty-five year statutes of limitation, Vernon's Ann. Civ.St. arts. 5509, 5510, 5519.

A decree of partition was entered by the district court of Marion County on the 26th day of May, 1920, between the heirs of Tom Preston in which one of the heirs, Mrs. Baldridge, was awarded Block No. 7, containing 55.64 acres of land described in the decree of partition recorded in the minutes of said court as being a part of the Upper Reuben Bennington Survey, described by metes and bounds and concluding with the following call: "Thence S. 1 W. with the W.B. line of the estate 1499

feet to the place of beginning, containing 55.64 acres of land, *less about one acre in the right of way of the J. & N. W. Railroad in the S.W. corner of the same.*" (Italics ours.) This exception forms the basis of this lawsuit and around which all of the contentions center. Appellants insist that the exception is ineffective to take from the partition decree the tract of land here in controversy. They cite numerous cases, among them the case of Gulf Production Co. v. Baton, 108 S.W.2d 960, 965 (by this court, writ refused); and Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391, as authority for their position. In the Baton case we said "the presumption obtains in this state that, where a tract of land is partitioned among the joint owners, the whole of said land is partitioned unless some portion thereof is *expressly excepted,* * * *" citing Rio Bravo Oil Co. v. Weed, supra. (Italics ours.) The above rule is undoubtedly the established rule of law in this state with respect to partition of realty by joint owners, and is applicable to the case at bar, perforce of the *express exception* of the small tract of land here in controversy as shown by facts and circumstances and the findings of the jury heretofore stated. Although the small tract of land is included in the perimeter description of the Baldridge tract in the partition decree, it was not partitioned because of the express exception contained therein. Rio Bravo Oil Co. v. Weed, supra; Gulf Production Co. v. Baton, supra. All subsequent vendees took the title to the Baldridge tract with a similar exception as that contained in the decree of partition. This exception appears in all of the leases and assignments under which appellants claim title. The partition decree was entered at a time when the J. & N. W. Railroad Company was in actual possession of this small segment of land in the southwest corner of the Baldridge tract and was actively using said section as a part of its right of way. This fact, no doubt, was the reason for the exception contained in the decree of partition.

Appellants make the further contention that a conveyance of land which excepts a road or railroad right of way passes a fee to the entire tract, including the reserved portion, burdened only with the easement. Cited in support of this contention are Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977; Shell Petroleum Corp. v. Ward, 5 Cir., 100 F.2d 778; Penn v. Holland, Tex.Civ.App., 105 S.W.2d 351; Bolton v. Dyck Oil Co., Tex. Civ.App. 114 S.W.2d 299. The above authorities support the proposition set out above. They each, in our opinion, set out a correct principle of law, based on the facts in each case. But in each of those cases the excepted portions of land referred to was admittedly an easement and nothing more, and the opinions of the courts in each instance expressly so state. In this case we are not dealing with an easement, but with the fee to the excepted portion, as is shown later on in this opinion. On the date of the partition of the Preston land, May 26, 1920, several deeds to the entire railroad right of way had been executed and delivered to the J. & N. W. Railroad, or its predecessors in title, and on the date of said partition the railroad was in actual visible possession of all of the right of way, using same for railroad purposes, and claiming to own the same. As proof of this fact it conveyed the minerals to a part of its right of way and executed a mineral lease under which the production of oil was had from the right of way. The above facts, together with the jury's findings of title to same in favor of the railroad company by limitation under the several applicable statutes and the jury's finding of presumed grant, all of such findings being based upon sufficient evidence to support them, certainly distinguish this case from the cases cited and relied upon by appellants, and the many other cases of similar import. It is not feasible to discuss all the authorities cited by appellants in their brief and motion for rehearing. These points are overruled.

We shall next look to the facts concerning the railroad's title to the land in controversy—appellants' fifth point.

The evidence shows without dispute that in 1893 Clark and Boice Lumber Company constructed a railroad extending about 14

miles northwest of Jefferson, Texas, which was used by them to haul logs to their sawmill located in Jefferson. This railroad was later extended in a northwesterly direction, as necessity required, to supply their sawmill with logs. On June 15, 1896, Clark and Boice conveyed all of its property, including sawmill, lands upon which it was located, railroad equipment and railroad right of way to James Moroney for the benefit of their creditors. On January 5, 1897, James Moroney sold this property conveyed to him by Clark and Boice, in trust, at public sale, in Jefferson, Texas, to Willard Burton, and on the same date executed a deed to said property to Burton. On March 11, 1897, Burton conveyed the same property to Clark and Boice Lumber Company by deed containing general warranty. On November 25, 1899, Clark and Boice Lumber Company conveyed the same property described as heretofore, to John R. Darnell, including the right of way on which their railroad was located. That part of the land concerning the railroad right of way reads: "Also the right of way upon which said railroad is built, where the said railroad runs through land not owned by the Clark & Boice Lumber Company, the right of way hereby conveyed is the right of way actually owned by the said Clark & Boice Lumber Company and where the said railroad runs through land owned by said Clark & Boice Lumber Company there is conveyed to the said John R. Darnell a right of way of 100 feet, being 50 feet on each side of the middle of the tract of said railroad. Together with all and singular the rights, members, hereditaments and appurtenances to said property belonging or in anywise incident or appertaining. To have and to hold all and singular the said property unto the said John R. Darnell, his heirs and assigns forever, and the said Clark & Boice Lumber Company hereby binds itself and its legal representatives to warrant and forever defend the title to the property so conveyed, unto the said John R. Darnell, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof." On November 25, 1899, John R. Darnell conveyed the entire line of railroad to Jefferson and Northwestern Railroad under the following description: "Beginning at Jefferson, Texas, and running in a northwesterly direction about 20 miles together with all cars, engines and appliances and appurtenances of every kind and description used in and about said railroad and in connection with the operation thereof. Also the right of way upon which said railroad is built, where, the said railroad runs through land not owned by the Clark & Boice Lumber Company, *the right of way hereby conveyed is the right of way actually owned by said Clark & Boice Lumber Company on November 24, 1899,* and where the said railroad runs through land owned by the said Clark & Boice Lumber Company the right of way is 100 feet, being 50 feet on each side of the middle of the track of said railroad. Together with all and singular the rights, members, hereditaments and appurtenances to the same belonging or in anywise incident or appertaining. To have and to hold, all and singular the said premises unto the said Jefferson & Northwestern Railway Company and its assigns forever. And I hereby bind myself, my heirs, executors, and administrators to warrant and forever defend all and singular the said premises unto the said Jefferson & Northwestern Railway Company and its assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under me." (Italics ours.) There is no deed in the record to Clark & Boice, originally, conveying the specific tract of land here in controversy. But, as set out above, there are several later transfers of record conveying the fee title to all of the right of way to Clark & Boice and to the J. & N. W. Railroad Company.

In answer to special issues, 5, 6, 7 and 8 the jury found that appellees and those under whom they claim held peaceable and adverse possession of the railroad right of way for five, ten and twenty-five years respectively. And in answer to special issue 5-a the jury found that appellees and those under whom they claim have held peaceable and adverse possession of the oil, gas and minerals in the land in controversy, producing, using or enjoying the same and paying

taxes thereon, and claiming under deed or deeds duly registered for a period of five consecutive years to March 10, 1950. In answer to special issue 9, under proper instructions, the jury found a presumption of a grant of a fee-simple title to the tract of land involved in this suit from Mrs. N. E. Taggart, R. W. Rodgers or Lee P. Wolfe to Clark, Boice and Collamer or those holding under them. And in answer to special issue No. 10 the jury found against a presumption of a grant of an easement from the same parties to Clark, Boice and Collamer or those holding under them. There is testimony from several witnesses to the effect that Clark and Boice who constructed the railroad, originally, claimed to own the right of way in fee simple. Several deeds were located conveying portions of the right of way in fee simple to Clark and Boice. Several witnesses testified that Clark and Boice claimed to own the right of way in fee, and there is considerable testimony of nonclaim by Prestons and Baldridge. The exception in the partition decree of May 26, 1920, certainly lends credence to the fact that the railroad company was using this land at that time as a part of its railroad right of way. The facts show further that appellant Pewitt purchased from Sclar in 1946 the railroad lease executed in 1937 upon which was a producing oil well and paid royalty to those persons holding under the railway lease. He produced from said oil well until he got permission from the Railroad Commission to plug it on October 16, 1947. Thus it seems clear that Pewitt himself recognized the fee title of the railroad company to its right of way. It is true that the well on the railroad right of way lease purchased by Pewitt and operated by him was not located on the specific tract of land here in controversy, but the lease to the right of way under which he held and produced oil covered 86 acres, being all the right of way from the sawmill in Jefferson to the Cass County line, which covered the land here in controversy.

Appellants' claim to the title to the oil and gas in the property here in controversy is based, as heretofore pointed out, on a lease from Mr. and Mrs. Baldridge and two from her assigns, all covering the 55.64 acres, which specifically except the land here in controversy.

█ There is sufficient evidence in the record to support the jury's findings on the theory of a presumption of grant to Clark, Boice and Collamer, and those holding under them, and also there is sufficient testimony to support the jury's findings of title by limitation in favor of appellees under the several statutes set out above, through deeds purporting to convey the fee title to the property to their predecessors in title. We do not think that our holding here in anywise conflicts with our holding in Peterson v. Holland, Tex.Civ.App., 189 S.W.2d 94, writ of error refused. The instrument in that case under which the railroad held its right of way did not convey the fee title. Such being the case, it could never by its use of the right of way mature a title to the fee by limitation, but could only mature an easement to the property. The rule laid down in Brightwell v. International & Great N. Railroad Co., 121 Tex. 338, 49 S.W.2d 437, 84 A.L.R. 265, governs and controls the issues here for the reason that the railroad in that case held the title under a deed purporting to convey the fee. See also Texas & N. O. Ry. Co. v. Orange County, Tex.Civ.App., 206 S.W. 539 (writ refused); Calcasieu Lumber Co. v. Harris, 77 Tex. 18, 13 S.W. 453. Many other cases might be cited by us in support of our holding above. The findings by the jury of a presumption of a grant to Clark and Boice, and the jury's finding for appellees under the five, ten and twenty-five year statutes and the finding for appellees of five years' limitation of the minerals support appellees' title to the land in controversy and the minerals thereunder.

██ The contention is made that the exception in the partition of the Preston estate among the heirs, and especially the 55.64 acres awarded to Mrs. H. E. Baldridge, reading: "Containing 55.64 acres of land less about 1 acre in the right of way of the J. & N. W. Railroad Company in the southwest corner of same" is sufficient to

locate said land on the ground. The facts are that the portion of the right of way in controversy lies in the extreme southwest corner of the Baldridge tract. The ties of the old railroad company were found on the ground and a fence some 50 or 60 feet from the ties was found to the northeast nailed onto trees and posts. One of the appellants' witnesses testified that he helped to build the fence there, leaving the railroad right of way out, and that he used some posts in constructing the fence. He testified further that his reason for not fencing the entire southwest corner of the Baldridge tract was that it would necessitate the expense of constructing two cattle guards and he just left it out. In addition to the above facts and circumstances appellants introduced three maps or plats prepared by their surveyor witness Thompson which show the railroad right of way. This witness testified that the oil well here in controversy is in the middle of the old railroad dump and in the southwest corner of the Baldridge tract. To the same effect is the testimony of surveyor Hull, who made the partition survey in 1920. The partition deed gives sufficient data for a surveyor to locate the "about one acre" reserved in the southwest corner of the Baldridge tract. These two recitals point out exactly where the land is located. In support of their contentions that there is not sufficient data contained in the Preston partition deed to locate the "about one acre" in the southwest corner of said tract, appellants cite the following authorities: 16 Am. Jur., p. 618, Sec. 315, and p. 619, Sec. 319; 14 Tex.Jur., p. 1023, Sec. 228; Glasscock v. Mallory, 139 Ark. 83, 213 S.W. 8; Seavey v. Williams, 97 Or. 310, 191 P. 779; Ascher v. Bird, Tex.Civ. App., 209 S.W.2d 637 (w/r, n. r. e.). We think a casual reading of those cases will convince one that they are not controlling here. Typical of them is the case of Seavey v. Williams, supra, wherein it was held as pointed out in appellants' brief that an exception of about 12 acres in a section located south of a river is void for uncertainty where there were more than 100 acres lying south of the river. The exception in that case neither locates nor describes the land in order that the exception

might operate. "The rule is now well settled that a writing will be held sufficient in this particular if it furnishes 'within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty.'" Hoover v. Wukasch, Tex.Sup., 254 S.W.2d 507, 510, and authorities there cited. This contention is overruled.

Appellants also cite Coleman v. Waddell, Tex.Sup., 249 S.W.2d 912, 913, as authority for their contention that the defendants must describe the particular land sought to be recovered by them. The above citation is the leading authority cited on the above contention. In Coleman v. Waddell, supra, Waddell was claiming a 100-acre tract of land, the record title to which was held by Coleman. Waddell lived on an adjoining tract in a different survey and was cultivating a small two-acre garden on Coleman's land, which was disconnected from his land. Waddell had the little garden spot fenced and his claim to title to Coleman's 100 acres was by limitation. During the period Waddell's title by limitation was maturing Coleman sold his timber to Kirby Lumber Company and Kirby went on the land and cut and removed timber during the Waddell limitation period. Judge Hickman held that "the entry of the record owners (Coleman) through their vendee Kirby Lumber Company, by cutting and removing the timber from this land restricted Waddell's use and possession to that actually enclosed by him [that is, the 2-acre garden] * * * and when the true owners, through their vendee, Kirby Lumber Company, entered the land and cut and removed the timber therefrom, the adverse possession, if any, of the Waddells, except as to the garden, ceased." Citing cases. And because Waddells failed to allege and prove any description of the two-acre garden the trial court could not render judgment for the two acres actually used by them. A reference to the opinion of the Court of Civil Appeals in this case, 248 S.W.2d 216, will show that the Waddells were suing Coleman for the 100-acre tract and, of course, in their role as plaintiffs it became necessary for them to allege a prop-

er description of the land and make proof of the 100 acres sued for. This they did. But, as stated above, our Supreme Court held that the Waddells' limitation was interrupted and the only land they showed themselves entitled to was the two-acre garden. The Waddells (still plaintiffs) "failed to allege or prove any description of the garden claimed by them. For that reason the trial court could not render judgment in their favor for it. They [as plaintiffs] had the burden of identifying the tract, and since they failed to do so, the trial court properly rendered judgment in favor of the record owners for title to the entire tract."

Appellants contend that there is no evidence, or not sufficient evidence, to support the jury's finding in answer to special issue No. 12 that the railroad's right of way was 100 feet in width at the location of the oil well. As heretofore pointed out, appellees' oil well is located on the parcel of land in the southwest corner of the Baldridge 55.64 acres of land on the Jefferson & N. W. Railroad right of way covered by the exception of "about one acre" in the southwest corner of the Baldridge tract. The railroad crosses the southwest corner of the Baldridge tract in a northwesterly and southeasterly direction. Several witnesses testified that the right of way at the location of the well was 100 feet wide. One party who helped fence the Baldridge tract testified that in building the fence around same they did not cross the right of way but built the fence some 50 to 60 feet northeast of the right of way and roughly parallel to it. This evidence, in our opinion, raises an issue of fact as to the width of the right of way and is sufficient to support the jury's answer fixing the width of the right of way at 100 feet.

We have carefully examined all other points brought forward by appellants. They are, in view of our holding expressed above, without merit and are respectfully overruled.

The judgment of the trial court is affirmed.