Argued March 5, affirmed July 15, 1959

# SPRINGER *v.* DURRETTE ET UX

342 P. 2d 132

*Willard L. Cushing,* McMinnville, argued the cause for appellants. With him on the brief were Marsh, Marsh & Dashney, McMinnville.

*Asa L. Lewelling,* Salem, argued the cause for respondent. On the brief were Lewelling & Gies.

Before McAllister, C. J., Perry, O'Connell, and Crawford, Justices.

O'CONNELL, J.

The plaintiff brought this suit to obtain a declaratory decree adjudicating the ownership of a parcel of land built up as an accretion to the upland by the action of the Willamette River. The defendants' and plaintiff's lands are contiguous, the defendants' land being to the north of the plaintiff's land. The Willamette River flows in a northerly direction on the west side of the two tracts. The accretion, which is in the form of a peninsula in the river, extends along the westerly sides of the plaintiff's and defendants' land. The peninsula has its base at the westerly boundary of plaintiff's land and extends northerly past the defendants' land and is separated from the

defendants' land by a slough. The peninsula is not attached to any land owned by the defendants.

The plaintiff's complaint contains two counts setting forth alternative theories: (1) that the entire peninsula constitutes an accretion to the plaintiff's upland alone, i.e., that no part of it was an accretion to the defendants' land, and (2) that if any part of the accretion vested in the defendants the plaintiff acquired the title to such part by adverse possession.

The lower court held that the title to that part of the peninsula lying south of the extension of the common boundary line between plaintiff's and defendants' land was acquired by the plaintiff under the law of accretion. The court further held that the plaintiff acquired title to the peninsula north of the extension of the division line by adverse possession.

Upon appeal the plaintiff has abandoned his claim that he is the owner of the entire peninsula by the law of accretion and asserts only that he is the owner of the entire peninsula through adverse possession. The sole question upon appeal, therefore, is whether there is sufficient evidence of adverse possession to sustain the plaintiff's contention. It is the defendants' contention that the plaintiff failed to prove that he entered under a claim of right or that he was in the hostile, exclusive possession of the property for a period of ten years.

The plaintiff's land, which is described in the briefs as the Springer Farm, was purchased in 1934 by Roy S. Springer, the father of the plaintiff. Roy Springer was in the Philippine Islands at the time of the purchase and employed Lester I. Pearmine to act as his agent in the management of the farm. From 1934 to 1937 the actual farming operation was carried

on by a person employed by Lester Pearmine, but in 1937 Pearmine went into possession and farmed the land himself. He testified that he was the sole representative for Roy Springer in the management of the farm from 1934 until 1946. He described himself as "manager" and "sole representative" in the management of the farm. Since 1946 the farm has been operated by Lester I. Pearmine, Jr. as the agent for Roy S. Springer's son, Howard Springer, the plaintiff in this case. Roy S. Springer died in 1941. Lester I. Pearmine, Sr. and his wife were appointed the administrators of his estate. Neither Roy S. Springer nor the plaintiff occupied the Springer Farm for any substantial period of time. Consequently, all of the essential elements to establish the acquisition of title by adverse possession must be found in the conduct of the Pearmines acting as agents for the Springers.

The possession of the peninsula relied upon by the plaintiff to establish his claim of adverse possession consisted principally in pasturing cattle on it from April to November during a period of approximately 20 years prior to the institution of the suit in 1955. The cattle were removed from the peninsula from November to April, during which period the area was subject to floods from the high water of the Willamette River. The plaintiff also introduced evidence showing that the Pearmines, in the management of the farm, sold timber on the part of the peninsula in controversy.

Assuming that the other elements of adverse possession were made out, the use of the peninsula for grazing purposes in the manner in which it was used in the present case would be sufficient to establish the requisite physical possession of the premises.

There is a conflict of authority on the question

as to whether the title to unenclosed land may be acquired by adverse possession where the only use made of the land is for the grazing of livestock. See annotation "Adverse Possession Predicated Upon Grazing of Livestock * * *." 170 ALR 838.

Where land is wild and unenclosed the conclusion that title by adverse possession was not acquired is freqently rested upon the ground that the use of it for grazing purposes does not satisfy the requirement that the possession must be open and notorious, *Reeves et al. v. Porta,* 173 Or 147, 144 P2d 493 (1944); or that it evidenced the necessary intent to claim it, *Linn County v. Rozelle,* 177 Or 245, 162 P2d 150 (1945); or that it sufficiently defined the extent of the adverse claim, *Lais v. Smith,* 63 Or 206, 209, 127 P 26 (1912); or that some other necessary ingredient of the doctrine of adverse possession is lacking, *Volckers v. Seymour,* 187 Or 170, 210 P2d 484 (1949).

■ The land claimed in the instant case is unfenced, but because of the water boundary the peninsula can be considered for all practical purposes as enclosed. *Seavey v. Williams,* 97 Or 310, 191 P 779 (1920); *Randolph v. Lewis,* 163 SW 647 (Tex Civ App 1914); *Brumagim v. Bradshaw,* 39 Cal 24 (1870).

■ Under the circumstances existing in the present case we regard the act of grazing cattle upon the peninsula as sufficient to meet the requirement of obtaining title by adverse possession if the plaintiff can establish the adverseness of his claim, a point which we shall deal with later. The claimant need only show that he "has acted towards the land in question as would an average owner, taking properly into account the geo-physical nature of this land," 6 Powell on Real Property § 1018, p 731, considering the "reason-

able uses for which the land in question was suitable."
6 Powell at p 717.

▮ The fact that the land was used for grazing only during the period from April to November does not preclude the claim on the ground of lack of continuity. As stated in 3 American Law of Property § 15.3, p 767, "possession may exist in a person who uses the land in the way in which an average owner of the particular type of property would use it though he does not reside on it and his use involves considerable intervals in which the land is not actually used at all." *Lantry v. Parker,* 37 Neb 353, 55 NW 962, 963 (1893); see *Adams v. Lamicq,* 118 Utah 209, 221 P2d 1037 1950).

We find ample support for our conclusion that by his conduct in grazing cattle on the land in question the claimant has satisfied the requirement of physical possession. *Seavey v. Williams,* supra at p 319; *Ambrose v. Huntington,* 34 Or 484, 488, 56 P 513 (1889); see *Adams v. Lamicq,* supra at p 1039 citing *Webber v. Clarke,* 74 Cal 11, 15 P 431, 435 (1887); *Davis v. Haines,* 349 Ill 622, 182 NE 718 (1932).

▮ The defendants contend that the plaintiff has failed to prove that the possession of the land in dispute was under a claim of right. This is an assertion that the plaintiff's possession was not adverse, i.e., that there was not "the intention of the disseisor to appropriate and use the land as his own to the exclusion of all others * * *." *Bessler v. Powder River Gold Dredge Co.,* 95 Or 271, 185 P 753, 187 P 621 (1920). The intent with which the occupant holds possession is normally determined by what he does upon the land. *Rowland v. Williams,* 23 Or 515, 32 P 402 (1893). Where the land is used in the manner that an owner would use it there is a presumption that the possession

is adverse. *Anderson v. Richards,* 100 Or 641, 198 P 570 (1921). As stated in *Bessler v. Powder River Gold Dredge Co.,* supra at p 282:

> "Continued, unexplained possession of land for a long period of time is evidence that the possession is adverse, and makes out a *prima facie* case, and until rebutted by some satisfactory evidence is conclusive as to the nature of the possession: *Smith v. Badura,* 70 Or 58, 62 (139 P 107); *Dunnigan v. Wood,* 58 Or 119, 124 (112 P 531)."

■ The defendants point to certain conduct on their part and on the part of third persons in the use of the peninsula to show that plaintiff did not assert a claim to the tract but, on the contrary, recognized the ownership of the defendants and their predecessors in interest of that part of the peninsula north of the extension of the boundary line between the two tracts. It must be kept in mind that the defendants did not acquire title to their tract until 1949, at which time the plaintiff and his predecessor had used the peninsula for more than ten years. Melvin Durette, a son of the defendants, just prior to the time the defendants acquired title to their farm, had observed persons cutting trees on the peninsula and that the cutting was done up to, but not north of, the extension of the boundary line between the two farms. He did not know who had done the cutting. Miller B. Lucas, the defendants' grantor testified that trees were cut to the boundary line but he stated that the cutting was done on the east bank of the slough which was a part of the mainland and not a part of the peninsula. Lester Pearmine, Jr. testified that in selling the timber he pointed out to the purchasers the fence on the mainland "but as far as the island is concerned, my arrangements with them was they could log any merchantable

timber." After the controversy arose between the Pearmines and the defendants, the latter had a survey made to establish a boundary line on the peninsula as an extension of the boundary line which separated the two farms. The defendants put in fence posts along the extended line. Lester Pearmine, Jr. made no objection when he observed this conduct on the part of the defendants. This is relied upon by the defendants as evidence of the absence of an adverse claim. However, soon after the survey was made the plaintiff brought the present suit.

There is some other evidence relating to the character of the plaintiff's possession which the defendants have relied upon to show that plaintiff's possession was not adverse. We have carefully examined this evidence, together with that recited above, and it is our opinion that it is not sufficient to rebut the presumption favoring the plaintiff.

■ The defendants contend that the Pearmines were tenants of the Springers and that as such their conduct cannot be relied upon to make out the necessary ingredients of adverse possession. It is not necessary for us to decide under what circumstances a tenant's possession is sufficient to establish title by adverse possession in the landlord, because we are of the opinion that the plaintiff proved that the Pearmines were the agents and not the tenants of the Springers. The rule is clear that the possession of the agent is the possession of the principal for the purpose of acquiring title by adverse possession. *Strom v. Hancock Land Co.,* 70 Or 101, 140 P 458 (1914).

We are in agreement with the trial court's conclusion that the Pearmines, as agents for the Springers,

held the tract in question openly, continuously and adversely for the requisite period and that the plaintiff thereby acquired title to the tract.

The decree of the lower court is affirmed.