BURNS *v.* FOSTER.

1. ADVERSE POSSESSION—FACTS OF THE CASE—CHARACTER OF PREMISES.

    The determination of what acts or uses are sufficient to constitute adverse possession depends upon facts in each case and to a large extent upon the character of the premises.

2. SAME—BURDEN OF PROOF.

    The burden of proving adverse possession rests upon the party who alleges it.

3. SAME—STRICT CONSTRUCTION.

    A strict construction is applied to the doctrine of adverse possession.

4. SAME—EVIDENCE—INFERENCES.

    Adverse possession must rest upon clear and positive proof, not inference.

5. SAME—EVIDENCE.

    Adverse possession must be established by clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right (CL 1948, § 609.1).

6. SAME—EVIDENCE—3-FOOT STRIP.

    Plaintiff's proof in suit to enjoin defendant adjoining city lot owner from trespass on 3-foot strip to which latter had record title *held*, not to have established claim of adverse possession by clear and positive proof.

REFERENCES FOR POINTS IN HEADNOTES
[2] 1 Am Jur, Adverse Possession § 237.
[3] 1 Am Jur, Adverse Possession §§ 238, 246.
[4] 1 Am Jur, Adverse Possession § 246.
[5] 1 Am Jur, Adverse Possession § 126.
[7] 1 Am Jur, Adverse Possession §§ 136–138.

7. SAME—TRUE OWNER'S KNOWLEDGE OF HOSTILE CLAIM—PER-
MISSIVE USE.

> To make good a claim of title by adverse possession, the true own-
> er must have actual knowledge of the hostile claim or the pos-
> session must be so open, visible and notorious as to raise pre-
> sumption of notice to the world that the right of the true
> owner is invaded intentionally, a mere permissive possession,
> or one consistent with the title of another, never ripening into
> a title by adverse possession.

Appeal from Chippewa; Nebel (Richard W.), J.
Submitted January 15, 1957. (Docket No. 63, Cal-
endar No. 47,044.) Decided February 28, 1957.

Bill by J. Alfred Burns and M. Doris Burns
against David Elihu Foster to enjoin trespass on
3-foot strip of property. Decree for plaintiffs estab-
lishing ownership. Defendant appeals. Reversed,
injunction dissolved and plaintiffs' claim of owner-
ship dismissed.

*Burney C. Veum,* for plaintiffs.

*D. D. Moorhead,* for defendant.

KELLY, J. Plaintiffs purchased in 1931 a 50-foot
lot in Sault Ste. Marie, and in 1936 constructed a
home 47 feet in width on said lot. In the spring of
1937 plaintiffs landscaped not only the 50 feet they
purchased but an additional 3 feet of an adjoining
lot (defendant's lot 15). While the property was
purchased by the plaintiffs as tenants by the entire-
ties, the husband is referred to as the plaintiff here-
in, representing both parties.

Defendant purchased this adjoining lot in 1953
and when plaintiff's right to ownership of the 3 feet
in dispute was challenged by defendant in 1955,
plaintiff brought this suit in chancery asking injunc-
tive relief against trespass.

Defendant appeals from a decree of the circuit
court for the county of Chippewa holding that plain-

tiff's acts of ownership for more than 15 years constituted adverse possession, vesting title in plaintiff.

Plaintiff's lot 16 and defendant's lot 15 (Robert D. Perry's Addition, Amended Plat) have 50-foot frontages on the north side of East Spruce street and a depth of 145 feet to an alley in the rear. Defendant's lot is to the west of plaintiff's, and when plaintiff purchased his lot the 2 lots to the west were vacant and the lot to the east, namely lot 17, had a residence thereon owned by Herbert E. Fletcher.

Plaintiff's testimony that he never intended to claim more than he purchased, namely lot 16, is as follows:

"*Q.* Did you receive this property by deed?
"*A.* I did.
"*Q.* And you are only claiming then up to the boundaries of lot 16, is that your testimony, that you received by deed?
"*A.* Well I wouldn't say that exactly, if there was a mistake made in the survey and I have owned the property 25 years, I don't know.
"*Q.* What property are you claiming, lot 16?
"*A.* That's right.
"*Q.* Are you claiming any additional property?
"*A.* Wait a minute.
"*Q.* How do you claim any property you don't have a deed to?
"*A.* Well we have been there that long. We have never been disputed there before.
"*Q.* When you went into possession, Mr. Burns, was it your intention to claim more than lot 16?
"*A.* No, that is why we had it surveyed.
"*Q.* Then really all you claim or intended to claim was lot 16, is that right?
"*A.* At that time, yes.
"*Q.* Are you claiming it now?
"*A.* That is for my attorney to say.
"*Q.* That is for you to decide, Mr. Burns?
"*A.* I don't know."

Plaintiff testified that surveyor Colwell made a survey establishing his lot lines prior to his landscaping in 1937. Plaintiff's architect and landscaper and, also, surveyor Colwell died prior to trial. Whether surveyor Colwell established plaintiff's lot lines depends solely upon plaintiff's word, as he had no written instrument or record to sustain such fact.

Appellant contends that the trial court "relied heavily in its opinion" on the line plaintiff contended was established by surveyor Colwell, and this is sustained by the statement in the trial court's opinion that: "The failure of the county surveyor, Colwell, to run a correct line has resulted in this litigation."

Appellee's application for a building permit was filed with the city of Sault Ste. Marie and attached thereto was a drawing, or ground plan, which establishes that appellee asked permission to build his house and attached garage so that the garage would extend to the lot line separating his property from Mr. Fletcher's property on the east, and extending the house to within 3 feet of his lot line on the west. The westerly line, as established by appellee in his application, did not include the 3 feet of property now in dispute.

Plaintiff's application for building permit was rejected by the building inspector because of the city's requirement that a building should not be constructed within 5 feet of the lot lines. To meet this objection plaintiff obtained, from lot owners Fletcher on the east and Dr. Cameron on his west, letters, which plaintiff presented to the zoning board on August 28, 1935. Mr. Fletcher's letter stated:

"It is my understanding that Mr. J. Alfred Burns is about to build a residence adjoining our residence on Spruce street on the west and that his plans are

drawn so that it will necessitate placing his garage up to our west line which will be satisfactory to us."

Dr. Cameron's letter confirmed the fact that plaintiff intended to build 3 feet from his west lot line. That letter read:

"It is my understanding that Mr. J. Alfred Burns is about to build a residence adjoining our property on Spruce street, on the east and that his plans are drawn so that it will necessitate placing his house up to 3 feet of our east line, which will be satisfactory to us."

Because of the letters presented along with the application for a building permit, the zoning board approved plaintiff's request for such building permit.

Dr. Cameron's letter to the zoning board was written on the "Burns Department Stores" stationery. Plaintiff was president of said store. Plaintiff denied that he ever asked Dr. Cameron's permission to build closer to his lot line than the ordinance allowed, and testified:

"*Q.* As long as this is on this subject, Mr. Burns, is that your signature?

"*A.* That's right.

"*Q.* And the defendant's exhibit E is a request for a building permit? Now in connection with obtaining this and your signature, did you ask permission of either of the lot owners to build that close?

"*A.* I have permission from this lot owner right here to build right up here on the line.

"*Q.* That would be the one east?

"*A.* Yes.

"*Q.* How about the one lying to the west?

"*A.* I don't remember. I bought that property before Dr. Cameron did. I had a deal with the Baptist Church. I went by the Colwell line.

"*Q.* You never did get permission from Dr. Cameron?

"*A.* No, I never did."

Dr. William F. Murtaugh testified that in 1936 he was a joint purchaser on contract of lot 15; that while plaintiff was in Dr. Cameron's office he had a telephone conversation with both Dr. Cameron and plaintiff and that in said conversation he "told Mr. Burns as far as I was concerned with the consent of Dr. Cameron, he could have the use of that property while building, and if the zoning board would give him permission to build a little closer to the line, it was all right with me. I knew Mr. Burns. I thought we were going to be all together, O.K., that was all."

Dr. Cameron was deceased at time of trial. His widow, Marie Cameron, who jointly with her husband purchased lot 15, testified:

"*Q.* A question has come up as to Mr. Burns' use of a portion of lot 15 that lies west of his house, and I wonder, Mrs. Cameron, can you tell us whether or not Mr. Burns had permission to use that property?

"*A.* He did."

Margaret Evelyn Murtaugh, the wife of Dr. William Murtaugh who at one time owned lot 15, testified that her father owned lot 15 before he deeded same to her husband, which would have been sometime during the years 1936 to 1938; that she was present in her father's home when plaintiff had a conversation with Dr. Cameron, and she testified:

"*Q.* As near as you can remember, what was the substance of the conversation?

"*A.* Well, it was that Mr. Burns wanted to see about having some extra space and he didn't have the proper space for his home, and he talked to my dad. Dad didn't want to sell it and we, they refused to sell it but he gave him the permission to use it."

Defendant testified that he purchased lots 15 and 14 immediately adjacent to plaintiff's property on

the west; that prior to purchase he visited the plaintiff and showed him a drawing of his proposed home and dental clinic and that plaintiff had no objection to these buildings; that he asked plaintiff: "Where is your lot line and he (plaintiff) said my lot line does not go this far. I am on your property and with that the conversation drifted to casual remarks and I left." Plaintiff denied that he had had this conversation with defendant.

Rudolph Larson, at one time county surveyor of Chippewa county, established the true and correct line separating plaintiff's lot 16 from defendant's lot 15, and testified that plaintiff's house was built 3 feet from the true line.

Determination of what acts or uses are sufficient to constitute adverse possession depends upon the facts in each case and to a large extent upon the character of the premises. *Barley* v. *Fisher,* 267 Mich 450. Plaintiff claims adverse possession from 1937 when he landscaped 3 feet beyond his lot into defendant's lot. At that time and from then until 1953 when defendant purchased the lot adjoining plaintiff's, the lot was vacant property.

It is elementary that the burden of proving adverse possession rests upon the party who alleges it; strict construction of the doctrine is applied, and such possession must rest upon clear and positive proof, not inference. *Conner* v. *Detroit Terminal Railroad Co.,* 183 Mich 241.

Adverse possession must be established by clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years,* hostile and under cover of claim of right. *Stevenson* v. *Aalto,* 333 Mich 582.

---

* See CL 1948, § 609.1 (Stat Ann § 27.593).—Reporter.

Plaintiff did not establish his claim of adverse possession by clear and positive proof.

To make good a claim of title by adverse possession, the true owner must have actual knowledge of the hostile claim *or the possession must be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally.*[*] A mere permissive possession, or one consistent with the title of another, can never ripen into a title by adverse possession. *Doctor* v. *Turner,* 251 Mich 175; *Seifferlein* v. *Foerster,* 218 Mich 179.

The record in this case does not disclose that the present true owner had actual knowledge of plaintiff's hostile claim, but, to the contrary, discloses that plaintiff made known to the true owner that he only claimed title to 3 feet beyond his building and not 6 feet as he now claims in this action, and that the previous true owners of lot 15 (Dr. Cameron, *et al.*) gave plaintiff the right to use said lot while it was not improved.

Plaintiff's proof in regard to the so-called "Colwell line" is negated by plaintiff's application for building permit, and plaintiff fails to offer satisfactory proof as to how he knew his true lot line in 1936 and then extended the lot line 3 feet into defendant's property in 1937.

Plaintiff made no claim that he paid taxes on any property other than lot 16.

The decree of the lower court is reversed, the injunction is dissolved, and plaintiff's claim to any part of lot 15 is dismissed. Costs to defendant.

Dethmers, C. J., and Sharpe, Smith, Edwards, Voelker, Carr, and Black, JJ., concurred.

[*] The italicized portion of this sentence was added by *sua sponte* amendment on November 12, 1957.—Reporter.