# STATE OF MICHIGAN

# COURT OF APPEALS

---

JAMES M. MOORE, Individually and as Trustee
of the JAMES M. MOORE TRUST U/A/D
SEPTEMBER 11, 1996,

UNPUBLISHED
March 15, 2016

Plaintiff-Appellee,

v

No. 324468
Wayne Circuit Court

JAMES ERIC MOORE and LISA MOORE,

LC No. 13-013143-CH

Defendants-Appellants.

---

Before: K. F. KELLY, P.J., and FORT HOOD and BORRELLO, JJ.

PER CURIAM.

Defendants appeal as of right the trial court's order quieting title to real property in favor of plaintiff and granting his motion for summary disposition. We affirm in part, reverse in part, and remand for further proceedings.

This case arises from a long-simmering disagreement between plaintiff, James M. Moore, and his son, defendant James Eric Moore, regarding a 10-acre parcel of property in Romulus, Michigan.[1] Father purchased adjoining 5- and 10-acre parcels in 1990, and son moved into the house on the 10-acre parcel shortly thereafter. Later that year, father and son drew up a handwritten purchase agreement, which son refers to as a land contract, providing for son's periodic payments culminating in a payment of the full purchase price of the 10-acre parcel. Son remained on the property, paying taxes and property insurance but no rent, until relations deteriorated between son and father's wife, Glenda Moore, around 2013. Father filed an eviction action against son that same year, but stipulated to dismissal of the action shortly after. Father then filed a quiet-title action, and defendants filed a counterclaim, requesting specific performance of the alleged land contract and alternatively, asserting ownership by way of adverse possession. Father filed a motion for summary disposition on the counterclaim, which the trial court granted. The trial court simultaneously entered an order quieting title to the property. On appeal, defendants argue that the trial court erred in granting father's motion for

---

[1] In an effort to avoid confusion, we will hereafter refer to James M. Moore as "father" and James Eric Moore as "son."

-1-

summary disposition and that the court abused its discretion by refusing their request for leave to amend their counterclaim.

We review de novo a trial court's decision on a motion for summary disposition. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).[2] In deciding a motion under MCR 2.116(C)(10), we review "the entire record, including affidavits, depositions, admissions, or other documentary evidence" in a light most favorable to the nonmoving party. *Gorman*, 302 Mich App at 115. To avoid dismissal on a motion for summary disposition under MCR 2.116(C)(10), the nonmoving party must "show[] by evidentiary materials that a genuine issue of disputed fact exists[.]" *Auto Club Ins Ass'n v State Auto Mut Ins Co*, 258 Mich App 328, 333; 671 NW2d 132 (2003).

We review de novo a trial court's ultimate decision in a quiet-title action, but review for clear error the factual findings underlying the court's decision. *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008). A trial court's decision on a motion for summary disposition, however, should not entail factual findings. *In re Handelsman*, 266 Mich App 433, 437; 702 NW2d 641 (2005). We also review de novo questions of law such as the existence and interpretation of a contract, *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006), and whether the statute of frauds bars an action, *In re Handelsman*, 266 Mich App at 435.

Defendants first argue that the trial court erred in granting summary disposition in regard to their land contract claim. Specifically, defendants contend that the trial court erroneously found that the contract violated the statute of frauds. Defendants assert that the statute of frauds did not require son's signature on the purchase agreement and that the agreement was otherwise a valid land contract. We agree that the trial court erred in its determination that the contract violated the statute of frauds.

"In Michigan, as elsewhere, the *form* of a contract for the sale of land is dictated by the statute of frauds." *Zurcher v Herveat*, 238 Mich App 267, 276; 605 NW2d 329 (1999). MCL 566.106, Michigan's codified version of the statute of frauds, provides that

> [n]o estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the

---

[2] The trial court did not identify the specific legal grounds on which it granted father's motion for summary disposition, but the comments at the hearing suggested that it considered material beyond the pleadings in reaching its decision. Accordingly, review under the standards of MCR 2.116(C)(10) is appropriate in this case. See *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19, 23; 800 NW2d 93 (2010).

party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

MCL 566.108 reiterates these requirements and states them somewhat differently:

Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing . . . .

"Simply put, therefore, a contract for the sale of land must, to survive a challenge under the statute of frauds, (1) be in writing and (2) be signed by the seller or someone lawfully authorized by the seller in writing." *Zurcher*, 238 Mich App at 277. Thus, the purchase agreement satisfied the statute of frauds. The handwritten agreement, which son provided as an attachment to his answer and counterclaim, was unquestionably in writing and was signed by father, the seller. The statute of frauds required nothing more. MCL 566.106; *Zurcher*, 238 Mich App at 277. Thus, the trial court erred in concluding that the land contract violated the statute of frauds because it lacked son's signature.

Accordingly, we reverse the trial court's ruling that the land contract violated the statute of frauds. Defendants raise additional arguments. Defendants assert that there is a valid land contract, and argue that they are entitled to specific performance of the contract given the unique nature of the property, especially as it relates to defendants and their claim that son tendered full payment pursuant to the contract multiple times. Additionally, defendants argue that their claim is not barred by the statute of limitations. Father challenges the validity of the alleged land contract, arguing that the contract violated the statute of frauds because son did not sign the alleged contract. Father additionally asserts that there is no evidence of even partial performance of the contract by defendants.

Here, we decline to make a decision regarding the parties' additional arguments relating to the alleged land contract. The trial court dismissed the case based solely on the lack of son's signature. The court did not consider whether the land contract was valid,[3] whether defendants complied with the agreement,[4] or whether defendants were entitled to specific performance. We

---

[3] The material provisions of a contract for the sale of land are "identification of (1) the property, (2) the parties, and (3) the consideration." *Zurcher*, 238 Mich App at 291. In addition, a Michigan land contract must additionally include the "essential elements" of the amount and time of installment payments and the interest rate. *Id*.

[4] We note that we disagree with plaintiff that there was no evidence of performance under the purchase agreement. Indeed, this appears to be a disputed fact, as son testified in his deposition that he made payments to father for two years pursuant to the purchase agreement, and offered to make full payment on the land contract on several occasions.

believe that these issues require consideration and determination by the trial court before we can render a decision. Accordingly, we remand to the trial court for further consideration.

Defendants next argue that the trial judge erred in dismissing their adverse-possession claim on the sole ground that son was father's tenant. Defendants further argue that the facts demonstrated that son had acquired the 10-acre property through adverse possession. While we disagree with the trial court's reasoning, we ultimately agree that no genuine issue of material fact exists regarding whether son acquired the property through adverse possession.[5]

To establish adverse possession, a party "must show that his or her possession was actual, visible, open, notorious, exclusive, hostile, under cover of a claim of right, continuous, and uninterrupted for the statutory period of 15 years." MCL 600.5801; *Beach v Lima Twp*, 283 Mich App 504, 512; 770 NW2d 386 (2009), aff'd and remanded on other grounds 489 Mich 99 (2011). In an adverse-possession context, the word hostile "is a term of art and does not imply ill will; rather, hostile use is that which is inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder." *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006) (citation and quotation marks omitted).

Here, the trial court held that defendants' adverse possession claim failed because they were mere tenants. The trial court correctly concluded that a tenant generally may not acquire his or her landlord's property through adverse possession because the landlord has already granted the tenant permission to occupy the property. *Id.*; see also *Rozmarek v Plamondon*, 419 Mich 287, 294; 351 NW2d 558 (1984). However, based on our above disposition, we are unconvinced that, as a matter of law, defendants were tenants. Moreover, there was no conclusive evidence of a tenancy because son never signed a lease or paid rent, father told him the parcel belonged to him, and son considered the property a gift. On the other hand, son made many improvements to the land, which he asserts could be considered rent. Based on these factual discrepancies, the trial court erred in summarily rejecting defendants' claim on this basis.

Nonetheless, dismissal of defendants' adverse possession claim was proper. Son's actual, visible, open, notorious, continuous, and uninterrupted possession of the 10-acre parcel was undisputed; he made substantial improvements, lived there for over two decades, and ran a business and raised a family there. *Beach*, 283 Mich App at 512. The facts also arguably indicate that his possession was exclusive. Father granted his tenants permission to cross the 10-acre parcel to reach his parking lot, an arrangement that son disliked due to the increased traffic, but the tenants only *used* the property, and there is no indication that father physically possessed it at any point.

Defendants fail to demonstrate, however, that his possession was hostile for the statutory period. A review of the lower court record suggests that son's first hostile use of the property was in 2013. That year, defendants refused to vacate the property despite Glenda's repeated

---

[5] This Court will not reverse when the right result was reached for the wrong reason. *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000).

provocations and the letters from father's attorney, and son's employee called the police to notify them that Glenda was removing no-trespassing signs. Those actions were manifestly hostile because they were inconsistent with father's ownership of the property and entitled father to a cause of action. *Wengel*, 270 Mich App at 92-93. By contrast, there was no evidence to indicate son's hostile use before 2013. Certainly, there was a long period in which son attempted to obtain a deed from father, offered to pay the full outstanding balance under the purchase agreement, refused to sign a lease to the property, and experienced uncertainty about the property's eventual disposition, none of which entitled father to a cause of action against him. *Id*. And son may have believed that he was already the property owner because father had offered to leave the parcel to him or had bought it specifically for him, but objective action—not subjective belief or motive—determines hostility for purposes of an adverse-possession claim. *Id*.

Moreover, the evidence overwhelmingly illustrates that son's possession of the 10-acre parcel was permissive, at least until 2013. *Burns v Foster*, 348 Mich 8, 15; 81 NW2d 386 (1957) (holding that "[a] mere permissive possession or one consistent with the title of another can never ripen into a title by adverse possession.".) Son testified that he and father decided that father would buy the 5- and 10-acre parcels and that son would "move into the house on the 10 acres[,]" and that father encouraged him to "live [his] dreams" on the property and improve it as he liked. He also testified that he failed to sign the purchase agreement because father told him that he would will the property to son, which would indicate permissive use rather than present ownership. Father also allowed son to stay on the property for years without a lease, despite the apparent fact that Glenda avidly desired such an arrangement. Father testified, variously, that he instituted the eviction action because he needed extra rental income from the property or because son had sued him, both of which indicated permissive possession that father could curtail as he saw fit. Neither permissive possession nor use by acquiescence can ripen into adverse possession. *Id*. Accordingly, even when viewed in a light most favorable to defendants, they failed to demonstrate a genuine issue of material fact regarding the elements of adverse possession, and father was entitled to judgment on that facet of the counterclaim as a matter of law.

Finally, defendants argue that the trial court abused its discretion in denying their request to amend their counterclaim to include claims for equitable relief, including the imposition of a constructive trust, whether father conveyed the property to son as a gift, and undue influence by Glenda. We agree. We review for an abuse of discretion a trial court's decision on a motion to amend a pleading. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 215-216; 859 NW2d 238 (2014); see MCR 2.110(A)(3) (providing that a counterclaim constitutes a pleading). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Sulaica v Rometty*, 308 Mich App 568, 589-590; 866 NW2d 838 (2014).

Generally speaking, a trial court should grant a motion to amend a pleading. See *Diem*, 307 Mich App at 216. MCR 2.118(A)(1) provides that "[a] party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party, or within 14 days after serving the pleading if it does not require a responsive pleading." Failing that, "a party may amend a pleading only by leave of the court or by written consent of the adverse party[,]" but "[l]eave shall be freely given when justice so requires." MCR 2.118(A)(2). In addition, a trial judge presiding over a motion for summary disposition under

MCR 2.116(C)(8), (9), or (10) "*shall* give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5) (emphasis added).

A trial court is justified in denying an amendment "only for particularized reasons, including undue delay, bad faith or a dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility." *PT Today, Inc, v Comm'r of Office of Fin and Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006). Further, this Court has held that a trial court's failure to state on the record its decision to deny leave to amend is error requiring reversal unless the amendment would be futile. *Id*. An amendment would be futile if it is legally insufficient on its face regardless of its substantive merits, it "merely restates allegations already made," or it adds a claim over which the trial lacks jurisdiction. *Id*. Consequently, the trial judge's failure to state on the record his decision to deny leave to amend requires reversal unless son's requested amendments would have been futile. *Id*.

We conclude that defendants should be permitted to amend their complaint to include requests for equitable relief. Indeed, we note the unusual facts and circumstances arising from this case, and in particular father's deposition testimony.[6] We conclude that defendants should be permitted to assert such claims and defenses, especially in light of our holding regarding the land contract. However, we do not reach a determination of whether defendants' claims have merit; we merely opine that defendants should be permitted to fully assert these claims in the trial court. Thus, the trial court abused its discretion in denying defendants' motion to amend.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ Stephen L. Borrello

---

[6] At his deposition, father declared that he was suing son because son had sued him, but admitted that he could not recall where he had gotten that idea. He said that he probably would not have sued son if he had known that son had not actually sued him. Son's lawyer asked him, "Do you understand that the lawsuit you filed against your son . . . is asking the [c]ourt to remove him from his home, his children, his wife from the home next door to you. Do you understand that?" and father replied, "Not really, no." In addition, father could not remember the names of his first two wives or where he met Glenda, was unsure of his children's birth order or son's age, could not recall his grandchildren's names, and was unable to provide his correct age when asked.