*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FOUAD BOU-MELHEM and IBRAHIM BOU-MELHEM,

Plaintiffs-Appellants,

v

TRUMBULL-COMMONWEALTH LLC,

Defendant-Appellee.

UNPUBLISHED
February 12, 2019

No. 340581
Wayne Circuit Court
LC No. 16-008851-CH

Before: CAMERON, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's order granting summary disposition in favor of defendant on plaintiffs' adverse possession and quiet title claims to property known as 5275 Trumbull in Detroit. We reverse and remand.

## I. FACTUAL BACKGROUND

The property at issue, 5275 Trumbull, consists of the northern half of a parking lot. The parking lot is located between defendant's convenience store (with an attached vacant building) to the north, and plaintiffs' car repair shop to the south. The southern half of the parking lot is known as 5265 Trumbull, and that half is undisputedly owned by plaintiffs. Plaintiffs have owned their repair shop and the southern half of the parking lot for at least 20 years, and according to their testimony, they have always used the entire parking lot for parking their customers' cars. Plaintiffs have also cut weeds on the lot and prevented the public from placing trash on the lot. However, they have never paid taxes on the 5275 Trumbull half of that lot. It appears that plaintiff Fouad owns the business, and plaintiff Ibrahim owns the land, but for purposes of this appeal we will treat them as a single entity.

Meanwhile, there have been numerous record owners of the 5275 Trumbull half of the lot. The Department of Natural Resources for the state of Michigan deeded 5275 Trumbull to the City of Detroit on October 3, 1994, for "Public purposes." On August 27, 2007, the City of Detroit sold the lot to Trumbull-Commonwealth, LLC. In 2009, Trumbull-Commonwealth, LLC sold the lot to the present owner, Trumbull and 94, LLC. Although court documents continue to

refer to Trumbull-Commonwealth, LLC, as defendant, we note that plaintiffs properly amended their complaint to reflect the change of ownership. For purposes of this opinion, we use "defendant" to refer to the present record owner of 5275 Trumbull.

Plaintiff Fouad testified that during the time the City of Detroit owned 5275 Trumbull, the City knew he was using the lot. He also testified that he never saw anyone from the City of Detroit using the lot and he never ejected anyone from the City. He testified that, in 2000, he built a gated fence across the front of the entire parking lot area. He did not obtain a permit for the fence or keep receipts for it. At some point, Fouad wrote letters to the City of Detroit asking to purchase the lot. Fouad was in federal prison for approximately the latter half of either 2004 or 2005, but he maintained daily communication from prison with his brother, who ran the car repair business on his behalf during that time.

Fouad testified that at some point, he paid an unknown person $20,000 in cash to pave the parking lot with concrete, in a manner defendant describes as "haphazard dumping." Fouad testified that he had a contractor pave the southern half of the parking lot with blacktop in 2016, and he claimed that he paid nothing for the service or the materials. He did not place blacktop on the 5275 Trumbull portion of the lot. At some point shortly after defendant acquired the northern properties in 2009, the manager of defendant's store allegedly gave plaintiffs express permission to use the northern half of the lot, and plaintiffs gave defendant a key to the gate. The instant suit was commenced when defendant developed plans to eliminate a portion of its vacant building to construct a larger parking lot for itself.

For ease of comprehension, the following photograph depicts the fences across the front and back of the lot, plaintiffs' building on one side of the lot, and both the concrete and the blacktop. Defendant's building is to the right, out of view in this photograph.



## II. PROCEDURAL HISTORY

On July 14, 2016, plaintiffs filed a complaint against Trumbull-Commonwealth, later amended to name defendant Trumbull and 94, alleging that plaintiffs had adversely possessed the property at 5275 Trumbull for more than 15 years and requesting that the court quiet title for the property in favor of plaintiffs. Plaintiffs alleged continuous use of 5275 Trumbull by "repaving the cement and parking their vehicles on that lot for at least" 20 years. Plaintiffs alleged the use was actual, visible, open, notorious, exclusive, and uninterrupted. Plaintiffs alleged that they had excluded others and held 5275 Trumbull as a claim of right.

On August 17, 2017, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(5), (7), (8), and (10). Defendant argued that plaintiffs had failed to respond to discovery requests; that plaintiffs had failed to provide a statement of title; that plaintiffs' use had not been continuous, actual, or exclusive; and that after 2009 plaintiffs' use was permissive. Defendant also argued that pursuant to MCL 600.5821, plaintiffs could not adversely possess the property while it was owned by the City of Detroit. Defendant also argued that plaintiff Ibrahaim was not involved in, and indeed wanted nothing to do with, the instant lawsuit.[1] The trial court concluded that it would be impossible for plaintiffs to establish adverse possession, so it granted defendant's motion for summary disposition.

## III. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. When the parties and the trial court rely on documentary evidence beyond the pleadings, this Court treats the motion as having been granted pursuant to MCR 2.116(C)(10). *Kefgen v Davidson*, 241 Mich App 611, 616; 617 NW2d 351 (2000).

A genuine issue of material fact exists "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). Further, the trial court "is not permitted to assess credibility, or to determine facts on a motion for summary judgment." *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). "The court should be liberal in finding a question of material fact and must carefully avoid making findings of fact under the guise of determining that no issues of material fact exist." *Citizens Ins Co of Am v Auto Club Ins Ass'n*, 179 Mich App 461, 464; 446 NW2d 482 (1989).

---

[1] Ibrahaim remains a plaintiff of record at this time, we believe that whether he should be removed from the action is better addressed by the trial court, and, in any event, his participation is not relevant to the issues on appeal. We will therefore not further address the matter.

## IV. ADVERSE POSSESSION

"The elements of adverse possession are . . . well established. A party claiming adverse possession must show clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period." *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018). Hostility "is a term of art" referring to nonpermissive use of property inconsistent with the true owner's rights, not to any kind of ill will or maliciousness. *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006). The statutory period in Michigan is 15 years. MCL 600.5801(4). The period does not begin to run "until the property owner of record has been disseised of the land." *Kipka v Fountain*, 198 Mich App 435, 439; 499 NW2d 363 (1993), citing MCL 600.5829. "Determination of what acts or uses are sufficient to constitute adverse possession depends upon the facts in each case and to a large extent upon the character of the premises." *Burns v Foster*, 348 Mich 8, 14; 81 NW2d 386 (1957). The elements of adverse possession must be established by "clear and cogent evidence," which "is more than a preponderance of the evidence, approaching the level of proof beyond a reasonable doubt." *Walters v Snyder*, 225 Mich App 219, 223; 570 NW2d 301 (1997).

### A. DISSEISIN

Defendant argues that disseisin of the land never occurred, so the period for adverse possession never began running. We disagree. "Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership." *Kipka*, 198 Mich App at 439. According to Fouad's deposition testimony, he erected a fence surrounding the parking lot in 2000. The fence was secured under lock and key, excluding uninvited foot and vehicular traffic from the parking lot. There is no dispute that fencing blocks off both the front and back of the lot, and the parking lot is flanked on both sides by plaintiffs' and defendant's buildings. The parking lot is therefore completely enclosed. Fouad further testified that the City of Detroit never came onto the property. Viewing the evidence in the light most favorable to the non-moving party, it would be reasonable for the finder of fact to conclude that the City did not have a key to plaintiffs' fence during the time it owned the property. The erection of a fence around a parking lot that cannot be accessed by the record owner can constitute disseisin. Furthermore, fencing the property would certainly be readily apparent to, and readily discoverable by, the record owner. See *Burns*, 348 Mich at 15; *Rozmarek v Plamondon*, 419 Mich 287, 293; 351 NW2d 558 (1984). We conclude that a question of material fact exists whether disseisin of the land occurred in 2000.

### B. CONTINUOUS AND ACTUAL POSSESSION

Defendant argues that plaintiffs could not have used the property continuously for the entire statutory period because of the approximately six months during which Fouad was in prison. We disagree.

Use of the property must be continuous for the 15 years, but daily and constant use is not always necessary; instead, "the acts constituting the use shall be of such frequency as to give notice to the owner of the land of the right claimed against him." *Dummer v United States Gypsum Co*, 153 Mich 622, 631; 117 NW 317 (1908); see also *Dyer v Thurston*, 32 Mich App

341, 344; 188 NW2d 633 (1971). Importantly, we find persuasive[2] cases from other jurisdictions holding that actual possession may be conducted through an agent or tenant. See *Omaha & F Land & T Co v Parker*, 33 Neb 775; 51 NW 139 (1892) (adverse possessor was out of state for a large portion of the statutory period, but his agent pastured the fenced land owned by another), and *Springer v Durette*, 217 Or 196; 342 P2d 132 (1959) (adverse possessor's agent grazed cattle on another's land from April to November—when the land was not flooded by high water in the river—for approximately 20 years; possession of the agent was possession of the adverse possessor for the purpose of acquiring title by adverse possession). Although Fouad was in prison for a time, he testified that he managed the business, which continued to use the lot, through his brother.

Defendant also contends that plaintiffs did not actually possess the northern half of the lot, as demonstrated by plaintiffs' act of paving only their southern half of the lot with blacktop. We disagree. "The owner of the record title need not, of course, take any affirmative possession of his property, but may simply hold it for future use or sale. However, one claiming title by adverse possession must show positive and affirmative acts of ownership." *Barley v Fisher*, 267 Mich 450, 453; 255 NW 223 (1934). We do not find plaintiffs' act of placing blacktop only on the southern half of the lot dispositive. Fouad testified that his business could not function without the use of the entire lot. At some point, Fouad placed concrete and gravel on the 5275 Trumbull portion of the lot, and he performed some maintenance to the entire lot. We are unaware of any reason why an adverse possessor necessarily must treat all portions of the property in the same manner, so long as the adverse possessor continues to engage in some affirmative acts of ownership over the whole.

Viewing the evidence in the light most favorable to plaintiffs, we conclude that a genuine question of fact exists as to whether plaintiffs had continuous and actual possession of 5275 Trumbull for the requisite 15-year period.

## C. OPEN, VISIBLE, AND NOTORIOUS POSSESSION

Adverse possession "must be so clearly shown as to make plain to the owner that his rights are being invaded." *Whitehall Leather Co v Capek*, 4 Mich App 52, 55; 143 NW2d 779 (1966) (quotation omitted). As discussed, and as admitted by the parties at oral argument, Fouad's fence closed off the lot to anyone without a key. Fouad further testified that he used the entire lot for parking cars. We conclude that a genuine question of material fact exists as to whether plaintiffs' possession was open, visible, and notorious.

## D. EXCLUSIVE POSSESSION

Defendant argues that any period of exclusive possession by plaintiffs ended in 2009 when defendant gave plaintiff permission to continue using defendant's side of the lot. A lack of permission is a necessary element of adverse possession. See *Grand Rapids v Pere Marquette R*

---

[2] "Cases from other jurisdictions, although not binding, may be persuasive." *Holland v Trinity Health Care Corp*, 287 Mich App 524, 529 n 2; 791 NW2d 724 (2010).

*Co*, 248 Mich 686, 690; 227 NW2d 797 (1929). Furthermore, "a period of permissive occupancy cannot be tacked onto a period of hostile occupancy, to show adverse possession." *Kranz v Terrill*, 494 Mich 860; 831 NW2d 238 (2013). Consequently, an affirmative grant of permission by the record owner, if proved, would terminate the running of the period of adverse possession.

However, Fouad affirmatively denied being given permission by defendant to use the 5275 Trumbull portion of the lot. Rather, Fouad testified that *he* gave permission to *defendant* when he gave defendant a key to his gate. Fouad also affirmatively disputed defendant's claim that its employees accessed the lot through defendant's adjacent vacant building; Fouad asserted that the vacant building was unsafe and unusable. Consequently, when the evidence is viewed in the light most favorable to plaintiffs, there is a genuine question of fact whether defendant gave plaintiffs permission to use the 5275 Trumbull portion of the lot, and therefore whether plaintiffs' period of adverse possession was terminated.

### E. ATTEMPTS TO PURCHASE

Defendant also points out that Fouad wrote a letter to the City of Detroit seeking to purchase 5275 Trumbull, and that he allegedly sought to purchase it from the principal of Trumbull-Commonwealth. Defendant contends that, because of these efforts to purchase the property, plaintiffs could not possibly have adversely possessed the property. We disagree. As defendant has noted:

> The belief or knowledge of the adverse claimant is not as important as his intentions. The intention is the controlling consideration and it is not the knowledge or belief that another has a superior title, but the recognition of that title that destroys the adverse character of possession. Claim of title or claim of right is essential to adverse possession, but it is not necessary that an adverse claimant should believe in his title, or that he should have any title. He may have no shadow of title and be fully aware of that fact, but he must claim title. He may go into possession without any claim of title, but his possession does not become adverse until he asserts one; and he may assert it by openly exercising acts of ownership, with the intention of holding the property as his own to the exclusion of all others. [*Smith v Feneley*, 240 Mich 439, 441-442; 215 NW2d 353 (1927).]

The mere fact, standing alone, that plaintiffs sought to purchase the property does not *necessarily* prove that they were not openly, visibly, notoriously, and exclusively possessing the land in a manner hostile to the true owner. We agree that it could constitute evidence that plaintiffs were not acting as hostile adverse possessors. However, such efforts could also reflect nothing more than a "belt and suspenders" approach.[3]

---

[3] We note that Fouad's alleged attempt to purchase the property from the prior owners was despite Fouad's knowledge that the property had already been conveyed. Fouad testified that he

Defendant relies on an unpublished case in which this Court held that the plaintiffs' repeated efforts to purchase the disputed property from every record owner constituted a recognition that the record owners held superior title. *Swayze v McMamee*, unpublished per curiam opinion of the Court of Appeals, decided October 17, 2017 (Docket No. 333793). *Swayze* is not binding on us. MCR 7.215(J)(1). However, even if it were, as we have noted, each adverse possession case must be decided on its own unique facts and circumstances. *Burns*, 348 Mich at 14. We are not persuaded that plaintiffs' alleged efforts here are of the same nature and under the same circumstances as those in *Swayze*. We conclude that a genuine question of material fact exists as to whether Fouad's efforts to purchase the property reflect a relinquishment of the adverse nature of plaintiffs' possession.

## F. STATUTORY PERIOD DURING MUNICIPAL OWNERSHIP

Defendant finally argues that the City of Detroit owned 5275 Trumbull until 2007, and that pursuant to MCL 600.5821, property owned by a municipality may not be adversely possessed. Defendant, relying on the current version of the statute, argues that plaintiffs' period of adverse possession could not have commenced until the City of Detroit conveyed the property, so their claims in this matter are premature. We disagree in part.

Presently, MCL 600.5821(2)(c) provides in relevant part that in "an action involving the recovery or the possession *of land* . . . a municipal corporation . . . is not subject to . . . a claim for adverse possession, acquiescence for the statutory period, or a prescriptive easement" (emphasis added). Defendant presents a reasonable argument premised on this language. However, MCL 600.5821 was revised significantly pursuant to 2016 PA 52, effective June 20, 2016. During the period of time the City of Detroit owned the lot at issue, MCL 600.5821 provided in relevant part:

(1) Actions for the recovery of any land where the state is a party are not subject to the periods of limitations, or laches. However, a person who could have asserted claim to title by adverse possession for more than 15 years is entitled to seek any other equitable relief in an action to determine title to the land.

(2) Actions brought by any municipal corporations for the recovery of the possession of any public highway, street, alley, or any other public ground are not subject to the periods of limitations.

We conclude that the prior version of MCL 600.5821 must be applied here.

In *Waisanen v Superior Township*, 305 Mich App 719, 728-730; 854 NW2d 213 (2014), this Court determined that based on the plain language of MCL 600.5821(2), regarding actions involving municipal land, in comparison with MCL 600.5821(1), regarding actions involving state land, a property owner could establish a claim to property through adverse possession

---

inquired into purchasing a building, not the parking lot, and that he never discussed the lot at all with the prior owners.

against a municipality if the property owner brought the action. See also *Mason v City of Menominee*, 282 Mich App 525, 528-529; 766 NW2d 888 (2008) ("because the language of MCL 600.5821(2) prevents a private landowner from acquiring property from a municipality by acquiescence only if the municipality brings an action to recover the property, it does not preclude plaintiffs' claim.") Plaintiffs filed the instant action. Consequently, under the prior version of the statute, plaintiffs would not have been precluded from pursuing an adverse possession claim against the City of Detroit. Under the facts of this case, we must decline defendant's invitation to apply the current version of MCL 600.5821.

Statutes are presumed to operate prospectively unless the Legislature directs otherwise, or the statute is remedial or procedural. See *People v Campbell*, 289 Mich App 533, 535-537; 798 NW2d 514 (2010). Statutes of limitation are generally considered procedural; however, the expiration of a limitation period constitutes a vested right that may not be retrospectively taken away. See *Gorte v Dep't of Transportation*, 202 Mich App 161, 167-168; 507 NW2d 797 (1993) (analyzing the effect of the 1988 amendment to MCL 600.5821). This Court in *Gorte* concluded that the amendment to the quiet title statute, which precluded the running of the limitations period against the state, could not be applied to owners claiming property by adverse possession whose claims had vested by the time that amendment had passed. *Gorte*, 202 Mich App at 168. Importantly, "Michigan courts have followed the general rule that the expiration of the period of limitation terminates the title of those who slept on their rights and vests title in the party claiming adverse possession." *Id*. Thus, "assuming all other elements have been established, one gains title by adverse possession when the period of limitation expires, not when an action regarding title to the property is brought." *Id*. at 168-169.

Plaintiffs allegedly began adversely possessing the property in 2000, which was more than 15 years before the effective date of 2016 PA 52. Therefore, presuming plaintiffs can ultimately satisfy all other elements of adverse possession, plaintiffs would have had a vested right to the property *prior to* the effective date of the revised language. *Gorte*, 202 Mich App at 168-169. A revised statute of limitations may not be applied retrospectively to impair a vested right. *Id*. Additionally, the City of Detroit no longer owned the property by the time the statute was revised. The language from the statute must be applied as it existed during the City of Detroit's period of ownership of 5275 Trumbull.

## V. OTHER GROUNDS FOR SUMMARY DISPOSITION

We recognize that defendant's motion for summary disposition asserted other grounds. Those grounds do not appear to have been ruled on by the trial court, and defendant has not advanced any alternate grounds for affirmance. We therefore decline to address any of the other issues that may have been raised in defendant's motion, and we express no views thereon. We further emphasize that we express no views regarding the proper resolution of the factual questions identified above, and we do not mean to impose any limitations upon what arguments consistent with this opinion may be addressed to or by the trial court on remand. Rather, we only hold that on the existing record, such questions exist when the evidence is viewed in the light most favorable to the non-moving party.

## VI. CONCLUSION

We conclude that the trial court erred by finding that there was no genuine question of fact whether plaintiffs could establish the elements of adverse possession to 5275 Trumbull. We therefore reverse the grant of summary disposition in favor of defendant, and we remand for further proceedings. We do not retain jurisdiction. Plaintiffs, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause