**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 2, 2002**

DAVID P. TAGGART and
BONNIE J. TAGGART,

    Plaintiffs/Counter-
    Defendants-Appellants,

v                                     No. 118206

TERRY L. TISKA,JAK
CONSTRUCTION, INC., and
KEITH SMITH, jointly and
severally,

    Defendants/Counter-
    Plaintiffs/Appellees.

_____

PER CURIAM

    This is a real estate case. Owners of adjoining parcels each claim ownership of a strip of land near the border of the two parcels. The circuit court granted summary disposition for the defendants on the ground the plaintiffs' suit was tardily filed because MCL 600.5868 provides a one-year limitation period. The Court of Appeals affirmed. We reverse

the judgments of the circuit court and the Court of Appeals because those courts misinterpreted MCL 600.5868. We remand this case to the circuit court for further proceedings.

I

This is a dispute between adjacent owners of rural property in St. Clair County.[1] The plaintiffs own the lot at 9055 Stone Road. To the east is a parcel at 9057 Stone Road. The defendants include the current and former owners of the 9057 property. The dispute concerns a triangle of property, with the point of the triangle on Stone Road and the base to the north, along the back property line. A surveyor confirmed that the disputed property lies within the legal description of 9057.

At all pertinent times, the 9055 property has contained a residence. From the late 1950s until 1979, it was owned by Edward F. Compton and his wife, whose name does not appear in the record. She was awarded the property when the Comptons divorced in 1979. In 1980, she sold it to plaintiffs David P. Taggart and Bonnie J. Taggart.[2]

The 9057 property was undeveloped until 1996. It had been owned by Lawrence W. David and Nellie I. David. As it happens, Ms. David was Mr. Compton's kindergarten teacher.

---

[1] The circuit court granted the defendants' motion for summary disposition. For purposes of this opinion, we accept as true the facts alleged by the plaintiffs. Where appropriate to supplement this narrative, we have drawn other uncontested facts from the record.

[2] We are told that the Taggarts' purchase of the 9055 property occurred in November 1980.

2

Ms. David passed title to the couple's children, Lawrence N. David and Diane D. Shafer. They, in turn, conveyed the property to Keith Smith,[3] who is the owner and president of defendant JAK Construction, Inc.[4] Mr. Smith built a house on the lot in 1996 (the house is not on the disputed strip), and then sold the 9057 lot to defendant Terry L. Tiska.

Ms. Shafer and Mr. Compton have filed affidavits in which they state that Mr. Compton long ago cut and cleared the disputed area in order to push back mosquitos that lived on 9057. When he began, his former kindergarten teacher told him to stop, lest he someday claim the property as his own. She and he then agreed that he could clear the strip if, at his own expense, he obtained and signed a lawyer-drawn document stating that the use was permissive and could never be the basis for a claim that he owned that portion of 9057. Neither Ms. Shafer nor Mr. Compton can locate a copy of that document.

In their complaint, the Taggarts say that, since 1980, they "have been in actual, visible, open, notorious, exclusive, continuous, and uninterrupted possession of [the disputed strip of property]." The Taggarts further state[5] that they have cleared brush, cut trees, gardened, maintained

---

[3] The David family's sale of the 9057 property apparently occurred in December 1995.

[4] The papers at hand sometimes speak of a conveyance to JAK. In this opinion, references to Mr. Smith include his company.

[5] These assertions are found in a paper designated "affidavit" and signed by Mr. Taggart, but not notarized.

a picnic area and horseshoe pit, constructed a burning pit with concrete blocks, and generally treated the disputed property as their own.

The current dispute arose in 1996, when Mr. Smith began preparing the 9057 property for construction of the house and its later sale to Ms. Tiska. While it appears that the Taggarts did not contest every step taken, they did make their displeasure known and they did protest Detroit Edison's installation of an electrical line through a trench in the disputed area.[6]

In December 1997, the Taggarts filed suit. The complaint was filed more than a year after the defendants had entered the disputed strip and had begun using it as their own, and more than a year after the plaintiffs had complained to Detroit Edison.

As indicated, the plaintiffs sought ejectment and the defendants counterclaimed to quiet title.[7] Among other claims, the defendants asserted that the plaintiffs' suit was

---

[6] The parties disagree about many of the facts. Among the points of controversy are the extent to which the Taggarts' usage was permissive, the dates of the key events of 1996, the timing and significance of negotiations to resolve this matter by quitclaim deed, the significance of everyone's failure to survey the land for many years, and the extent to which trees and other features of the land would reasonably suggest a natural boundary.

[7] The parties submitted a variety of claims by complaint, countercomplaint, and third-party complaint. However, the claims mentioned above (ejectment and quiet title) are all that we consider in this opinion.

untimely under MCL 600.5868, which the defendants characterized as a one-year statute of limitation.

The circuit court granted a defense motion for summary disposition, agreeing that the plaintiffs' suit was untimely. The circuit court thus ruled that Ms. Tiska, as holder of the recorded title, was the owner of the property. The court did not address the merits of the question whether the Taggarts had gained ownership by adverse possession.

The Court of Appeals affirmed. 242 Mich App 688; 619 NW2d 731 (2000).[8]

The Taggarts have applied for leave to appeal in this Court.

II

This case concerns the proper interpretation of MCL 600.5868. Specifically, the issue is whether the following provision states a one-year period of limitation barring the Taggarts' ejectment suit:

> No person shall be deemed to have been in possession of any lands, within the meaning of this chapter merely by reason of having made an entry thereon, unless he continues in open and peaceable possession of the premises for at least 1 year next after such entry, or unless an action is commenced upon such entry and seisin, within 1 year after he is ousted or dispossessed of the premises.

We stated our standard of review earlier this year in *Hanson v Mecosta Co Rd Comm'rs*, 465 Mich 492, 497; 638 NW2d 396 (2002):

---

[8] Reh den by unpublished order, entered November 21, 2000 (Docket No. 219498).

This case involves a review of a decision on a motion for summary disposition, and presents an issue of statutory construction, both of which we review de novo. *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 NW2d 515 (2001); *Brown v Michigan Health Care Corp*, 463 Mich 368, 374; 617 NW2d 301 (2000).

III

In its opinion of affirmance, the Court of Appeals explained its conclusion that MCL 600.5868 provides a one-year limitation period. The Court stated:

We note that in this case the statute's wording causes its meaning and intended application to be less than perfectly clear, and we urge the Legislature to revisit and clarify this provision. However, this section is contained in the portion of the Revised Judicature Act[9] governing the limitation of actions and it is well established that a plaintiff who is aware of his right to bring a cause of action may not sit idly by and later bring an untimely suit. Therefore, in light of the intent of the Legislature to generally limit untimely actions, and the language of the statute at issue in this case, we conclude that the statute requires an action for recovery of property to be commenced within one year after a person has reentered the property after being ousted. [242 Mich App 690-691.]

Because the Taggarts filed their complaint more than a year after Mr. Smith began work on the 9057 property and more than a year after a trench was dug across the disputed strip, the Court of Appeals concluded that the suit was untimely filed more than one year after the Taggarts had been ousted.

The Court of Appeals erred in its conclusion that MCL 600.5868 is a one-year statute of limitation for persons who, after becoming owners by adverse possession, need to enforce

_____

9 MCL 600.101 *et seq.*

6

their rights of ownership. Although the language of the statute is less than perfectly clear, a proper understanding of MCL 600.5868 can be gained by examining this Court's application of this statutory language.

In *Donovan v Bissell*, 53 Mich 462; 19 NW 146 (1884), the unanimous opinion of Chief Justice COOLEY explains the nature of this provision. Daniel Donovan and Augustus A. Bissell were adjacent landowners. By error, Mr. Donovan erected a fence that encroached fifty feet onto the land owned by Mr. Bissell. More than twenty years later (i.e., after the statutory period for gaining ownership by adverse possession had run[10]), Mr. Bissell's successor in interest tore down the fence, prompting Mr. Donovan to sue for trespass. It was evident that Mr. Donovan had acquired title by adverse possession *unless* his twenty-year period of continuous possession had been interrupted when Mr. Bissell tore the fence down on one earlier occasion. The Court explained:

> At that time Mr. Bissell, according to the testimony, after having asserted his right to the land in dispute, in an interview with the plaintiff, went upon the land with assistance, and tore down a fence built by the plaintiff where the fence more recently torn down was afterwards constructed. How long the fence remained down is not shown; but it seems to have been some days, and may have been for a considerable period. But it does not appear that Mr. Bissell took possession for a single day or hour except for the purposes of this act of destruction.
>
> The circuit judge instructed the jury that if Bissell made to the plaintiff a claim of right to

---

[10] The limitation period is now fifteen years. MCL 600.5801(4).

7

the premises, and went out to them and pulled down the fence in pursuance of this claim, such acts would break the continuity of the possession; that the possession must be continuous, and if thus broken, the plaintiff could claim nothing by adverse possession.

The judge was in error. The act proven by the defendants was a mere trespass upon the plaintiff's possession and worked no disseizin. It might, perhaps, have constituted a sufficient entry at the common law; but a mere entry is not sufficient in this State to stop the running of the statute of limitations, unless the party making it "shall have continued in open and peaceable possession of the premises for at least one year next after such entry, or unless an action shall be commenced upon such entry and seizin within one year after he shall be ousted or dispossessed of the premises." How. Stat. § 8705. Mr. Bissell did not bring himself within the terms of this statute.

The judgment [for the defendants, who claimed title under Mr. Bissell] must be reversed and a new trial ordered. [53 Mich 463-464.]

This Court similarly applied the predecessor of MCL 600.5868 in *Place v Place*, 139 Mich 509, 510; 102 NW 996 (1905). In *Place*, the question was whether a title holder's occasional exercise of rights of ownership effectively interrupted an otherwise continuous period of adverse possession by his former spouse. *Place* held that "these disturbances of her possession would not interrupt the running of [her period of adverse possession]." *Id.*

To restate the holding of *Place* in the words of the statute, the ex-husband was not deemed to have been in possession of the disputed land merely by reason of having made an entry thereon, unless he either continued in open and peaceable possession for at least a year following the entry, or, if ousted by the adverse possessor, filed suit within a

8

year after she ousted him. He did neither, and so the running of her adverse possession was not interrupted.[11]

## IV

In the present case, the Taggarts allege that they became owners of the disputed strip before 1996 as the result of many years of uninterrupted adverse possession. Defendants Smith and Tiska pose various defenses, including that the Taggarts' use was permissive and never adverse. These issues were not tried because the circuit court applied MCL 600.5868 as a one-year statute of limitation on the Taggarts' claim. However, if the Taggarts did indeed gain ownership through adverse possession, their claim is governed by the same fifteen-year period[12] as any other owner.

MCL 600.5868 is not a one-year statute of limitation on the Taggarts' ejectment suit. Instead, it is relevant in determining whether an adverse possessor's hostile possession

---

[11] The predecessor of MCL 600.5868 is also noted in *Riopelle v Gilman*, 23 Mich 33, 35 (1871). Dealing with an issue that concerned "a remnant of the old real estate law," Chief Justice CAMPBELL did not elaborate on the meaning of the language now found in MCL 600.5868. However, his treatment is consistent with our holding today.

[12] In pertinent part, MCL 600.5801(4) provides:

No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

And:

. . . the period of limitation is 15 years.

9

of land was interrupted before the expiration of the fifteen-year period necessary to establish ownership by adverse possession. If pertinent to this case at all, MCL 600.5868 will assist in the application of this limitation period by clarifying the circumstances that constitute a continuous possession of land.[13]

For these reasons, we reverse the judgments of the circuit court and the Court of Appeals. We remand this case to the circuit court for further proceedings on the unresolved claims of the parties. MCR 7.302(F)(1).

CORRIGAN, C.J., and CAVANAGH, WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

---

[13] In this respect, the function of MCL 600.5868 is somewhat similar to that of the preceding section, MCL 600.5867, which states certain presumptions regarding possession of land.