*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TERESA M. ENNIS-DECKER, DAVID DECKER, and 9575 SOUTH STATE, LLC,

UNPUBLISHED
June 22, 2023

Plaintiffs/Counterdefendants-
Appellees,

v

No. 361641
Tuscola Circuit Court
LC No. 2019-030916-CH

KEVIN BAILEY and KENDRA BAILEY,

Defendants/Counterplaintiffs-
Appellants.

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

In this property dispute, defendants, Kevin Bailey and Kendra Bailey, appeal as of right the trial court's opinion and order finding that plaintiffs, Teresa M. Ennis-Decker, David Decker, and 9575 South State, LLC, acquired title to the disputed property—a strip of land bordering the parties' adjacent parcels—by adverse possession and acquiescence, and dismissing defendants' counterclaim of trespass. We affirm.

## I. BACKGROUND

This case arises out of a dispute over a strip of property, referred to as the "north drive," which borders plaintiffs' lot ("Parcel A") and an adjacent wooded lot to the north that is owned by defendants, who also own the lot abutting Parcel A on the east side ("Parcel B"). Plaintiff Ennis-Decker's optometry clinic is located on Parcel A. A septic field and parking lot that service the clinic extend into the north drive area. Plaintiffs purchased Parcel A in 2001. Defendants purchased Parcel B in 2003, and they purchased the wooded lot in 2007. In 2019, Kevin informed Ennis-Decker that her septic tank and septic field were on his property. In July 2019, Ennis-Decker obtained a survey, which confirmed that the north drive area containing the septic field and parking lot extended into defendants' wooded lot.

As relevant to this case, Allan Harvey originally owned Parcel A. In approximately 1992, Harvey had the building built on Parcel A, and installed the septic system and parking lot to service

-1-

the building.  Harvey testified that he and the owner of the wooded lot considered the tree line (north of the disputed north drive area) to be the boundary between the two properties.  Harvey, who operated a driving range and golf retail shop on the property, testified that Parcel A had a south drive and a north drive, both of which were used to enter the property from M-15 and exit the property onto M-15, which runs along the western boundary of Parcel A.  The north drive was part of the north line of the property, and it had two steel posts that Harvey used to put up a chain when he locked up at night.  Harvey testified that the boundary between Parcel A and the wooded lot was just north of the northern post that he used for the northern drive.  Harvey sold Parcel A to John Carl in January 2001, and plaintiffs bought Parcel A from Carl on June 19, 2001.

Ennis-Decker testified that she, her employees, and her patients had used the north drive— the area between the two steel posts—since 2001 to enter and exit Parcel A.  Additionally, she testified that she mowed the north drive and that snow plowing was always done up to the wood line of the wooded parcel.

Defendants purchased the wooded lot to the north of Parcel A from Harvey in August 2007.  Kevin testified that when he purchased the wooded lot he knew where the boundary line was; he also knew that plaintiffs' septic field was located on defendants' property.  In approximately February 2019, defendants met with Ennis-Decker and informed her that the septic field for her building was located on defendants' property.  Ennis-Decker obtained a survey of her property; the survey revealed that Parcel A did not include the north drive area, which contained the septic field, part of the parking lot, and the area used by Ennis-Decker, her employees, and her patients to enter and exit the property.

After attempts to resolve the property dispute failed, plaintiffs filed a complaint seeking declaratory relief, asserting that they had acquired the north drive by adverse possession or acquiescence.  Defendants denied the allegations and brought a counterclaim asserting that plaintiffs' encroachment upon defendants' property constituted a trespass.  The trial court held a bench trial and found that plaintiffs had established all the elements of adverse possession and acquiescence.  The court found that the elements of adverse possession were satisfied because Harvey had the building, parking lot, and septic tank and field built in 1992, and "[f]rom 2001 until February of 2019, Plaintiffs and their customers used the parking lot, North Drive, and the septic tank/field in a manner consistent with its character, uninterrupted, for 18 years."  Additionally, "[d]efendants did not take up an action until the current one, some years after the statutorily required 15 years."  The court reasoned that because the evidentiary standard is lower and hostility is not required for acquiescence claims, plaintiffs could also succeed under a theory of acquiescence.  The court accordingly entered an opinion and order finding in favor of plaintiffs and dismissing defendants' counterclaim.  This appeal followed.

## II.  STANDARD OF REVIEW

Claims for adverse possession and acquiescence are equitable in nature, and equitable claims are reviewed de novo.  *Beach v Lima Twp*, 283 Mich App 504, 508; 770 NW2d 386 (2009); *Sackett v Atyeo*, 217 Mich App 676, 680; 552 NW2d 536 (1996).  Additionally, a trial court's findings of fact in a bench trial are reviewed for clear error, and its conclusions of law are reviewed de novo.  *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010).  A trial court's factual finding is clearly erroneous when there is no evidentiary support for

it or if this Court is left with a definite and firm conviction that a mistake has been made. *Id*. at 251. When this Court reviews factual findings, it must give great deference to the trial court because the trial court is in a better position to examine the facts. *Id*.

## III. ADVERSE POSSESSION

Defendants argue that the trial court clearly erred by finding that plaintiffs' possession of the north drive was actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of 15 years. Additionally, defendants argue that plaintiffs cannot tack on the possessory periods of their predecessors because plaintiffs failed to provide evidence of an instrument that documented the transaction. We disagree.

MCL 600.5801 creates "[t]he underlying statutory basis that gives rise to the doctrine of adverse possession." *Houston v Mint Group, LLC*, 335 Mich App 545, 558; 968 NW2d 9 (2021). MCL 600.5801 provides, in relevant part:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

"Ordinarily, an action for the recovery or possession of land must be brought within 15 years after it accrues." *Houston*, 335 Mich App at 558; see also MCL 600.5801(4).

This Court explained the principles of adverse possession in *Kipka v Fountain*, 198 Mich App 435, 439; 499 NW2d 363 (1993):

> A claim of adverse possession requires clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years. These are not arbitrary requirements, but the logical consequence of someone claiming by adverse possession having the burden of proving that the statute of limitations has expired. To claim by adverse possession, one must show that the property owner of record has had a cause of action for recovery of the land for more than the statutory period. A cause of action does not accrue until the property owner of record has been disseised of the land. MCL 600.5829. Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership. [Citations omitted.]

"[T]he burden of proving adverse possession rests upon the party who alleges it." *Burns v Foster*, 348 Mich 8, 14; 81 NW2d 386 (1957).

## A. EXCLUSIVE AND CONTINUOUS POSSESSION

Defendants argue that plaintiffs did not exclusively and continuously possess the north drive. We disagree.

" 'Possession' refers to an exercise of dominion over the property, and there may be degrees even in the exclusiveness of the exercise of ownership." *Jonkers v Summit Twp*, 278 Mich App 263, 274-275; 747 NW2d 901 (2008) (quotation marks and citation omitted). Exclusive possession requires that the adverse possessor have "the intention of holding the property as his own to the exclusion of all others." *Smith v Feneley*, 240 Mich 439, 442; 215 NW 353 (1927). Continuous possession requires that possession of the property be continuous for the 15-year statutory period. See *Houston*, 335 Mich App at 558; see also MCL 600.5801. While "acts amount[ing] to no more than occasional trespasses or acts of ownership . . . do not constitute continuous possession," *Bankers Trust Co of Muskegon v Robinson*, 280 Mich 458, 465; 273 NW 768 (1937), continuous possession does not require "constant use," *Dyer v Thurston*, 32 Mich App 341, 344; 188 NW2d 633 (1971).

Furthermore, the 15-year period does not need to be satisfied by a single owner. See *Houston*, 335 Mich App at 560. "[S]uccessive periods of adverse possession by different parties can be joined or 'tacked' to satisfy the 15-year statutory period, but only if there was privity of estate." *Id.* "This privity may be shown in one of two ways[:] by (1) including a description of the disputed acreage in the deed, . . . or (2) an actual transfer or conveyance of possession of the disputed acreage by parol statements made at the time of conveyance." *Killips v Mannisto*, 244 Mich App 256, 259; 624 NW2d 224 (2001).

In this case, the evidence presented at trial clearly and cogently established that plaintiffs had exclusive, continuous possession of the north drive for a period of at least 15 years. Parcel A was originally owned by Harvey, who sold the property to Carl in January 2001, who then sold the property to plaintiffs in June 2001. Harvey testified that when he owned Parcel A, he and Bob Minekey, the owner of the wooded lot to the north, considered the boundary line to be along the tree line of the wooded lot. Accordingly, Harvey used his property as if it included the north drive by placing the septic field and septic tank in the north drive area, by creating a parking lot that extended into the north drive, and by using the north drive as an entrance and exit to Parcel A. Harvey testified that he built the building and installed the septic system around 1992. Harvey also explained that the property had a "south drive" and a "northern drive," and he had steel posts put in so he could "chain it off when we locked at night." Ennis-Decker's testimony also referred to two photographs that were taken in 2001 by the bank handling her mortgage, several of which showed that the parking lot extended north of the property line and that a white vehicle was parked north of the property line. Ennis-Decker, her employees, and her patients used the north drive from 2001 "until [Kevin] put a chain across it once the lawsuit started" in 2019. Furthermore, Ennis-Decker testified that she always had the snow plowed "over to the wood line" of the wooded lot and she mowed the north drive. Although Kevin testified that he mowed the property at least once per week from 2007 up until the lawsuit and that he had put the chain for the north drive up and down since 2008, any conflicts in the testimony were to be resolved by the trial court and such credibility determinations should not be second-guessed by this Court on appeal. See *Chelsea*, 288 Mich App at 251. Therefore, the evidence was sufficient to show that plaintiffs had exclusive possession of the north drive. And the evidence was sufficient to show that plaintiffs had continuous possession of the north parcel from at least 2001 until 2019—more than the 15-year statutory requirement.

Furthermore, the evidence and testimony established that plaintiffs and their predecessors were in privity, thereby allowing tacking of the periods of adverse use. Harvey considered the

property line to be just north of the northern post that he used for the northern drive. Ennis-Decker's testimony demonstrated that she understood the northern boundary line to be in the same location as Harvey did. Ennis-Decker testified that the north drive has two metal posts—a "south post" and a "north post." Ennis-Decker and Decker "always considered" the north post to be their property line. Although plaintiffs did not admit evidence of instruments of conveyance that mentioned the north drive, it can be inferred that parol references were made regarding the north drive when Harvey conveyed the parcel to Carl and when Carl conveyed the property to plaintiffs. Accordingly, privity is established for purposes of tacking periods of adverse use together between Harvey, Carl, and plaintiffs. Therefore, the evidence was sufficient to show that plaintiffs had continuous possession of the north drive area from 1992 until 2019—more than the 15-year statutory requirement.[1]

Defendants rely on Kevin's testimony that he cleared out the north drive to argue that plaintiffs did not have exclusive control over the north drive. However, "occasional trespasses do not suffice to defeat a claim of exclusivity." *Waisanen v Superior Twp*, 305 Mich App 719, 732; 854 NW2d 213 (2014).[2] Additionally, the statutory period for adverse possession is not interrupted unless the true owner reenters the property and remains in possession for at least one year after reentry or files suit within one year. See *Taggart v Tiska*, 465 Mich 665, 672-673; 641 NW2d 240 (2002), citing MCL 600.5868. Defendants took no such action.

## B. OPEN, NOTORIOUS, AND HOSTILE

Defendants argue that plaintiffs failed to prove that their possession was open and notorious. We disagree.

"In order to support a claim of title by adverse possession, acts of possession must be open and of a hostile character, but it is sufficient if the acts of ownership are of such character as to indicate openly and publicly an assumed control or use such as is consistent with the character of the premises in question." *Houston*, 335 Mich App at 560 (quotation marks, citation, and emphasis omitted). "[H]ostile use is that which is inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder." *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006) (quotation marks and citation omitted). Regarding the open and notorious requirement:

> The possession must be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally, and with the purpose to assert a claim of title adversely to his, so that if the true owner

---

[1] Defendants argue that because Harvey owned Parcel A and the wooded lot at the same time, the earliest that plaintiffs' claim for adverse possession could start is in 2001 when they purchased Parcel A from Harvey. However, defendants have failed to provide legal support for his argument. Because defendants have failed to adequately brief this argument, it is abandoned. See *Estate of Robinson by Milne v Robinson*, 339 Mich App 682, 684 n 1; 984 NW2d 844 (2021).

[2] *Waisanen* was superseded on other grounds by the Legislature's amendment of MCL 600.5821. See 2016 PA 52, effective June 20, 2016.

remains in ignorance it is his own fault. [*Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 211; 912 NW2d 161 (2018) (quotation marks, citation, and emphasis omitted).]

The open and notorious requirement can also be satisfied if the true owner of the property has "actual knowledge of the hostile claim." *Burns*, 348 Mich at 15.

In this case, clear and cogent evidence established that plaintiffs' possession of the north drive was open, notorious, and hostile. Most critically, Kevin admitted during his testimony that he knew where Ennis-Decker's septic field was located when he bought the wooded lot in August 2007. Moreover, Kevin testified that he knew where the property line was located at the time he purchased the property. Kevin testified that the septic tank "sets right on the property line," and the septic field, which is "north and east of the tank," is on Kevin's property. Plaintiffs' possession of the north drive was open and notorious because defendants had actual knowledge of plaintiffs' hostile claim.

Additional testimony and evidence showed that not only was plaintiffs' possession of the north drive open and obvious by Kevin's knowledge of where the septic field was located, but it was also open and obvious because plaintiffs' possession was so open, visible, and notorious as to raise the presumption of notice to the world that the right of defendants was invaded intentionally. See *Marlette*, 501 Mich at 211. The testimony of Harvey and Ennis-Decker indicated that they used the north drive as an entrance and exit for Parcel A. And the photographs that plaintiffs admitted as evidence showed that, in 2001, plaintiffs' parking lot extended well beyond the northern property line of Parcel A. Furthermore, the photographs showed that there was, at one point, a shed next to the building on Parcel A, and Kevin agreed that the shed would have encroached onto the wooded lot as much, if not more than, the septic system. While the testimony and documentary evidence showed that the shed no longer exists, recent photographs showed that plaintiffs' dumpster was in a similar location as the shed, and half of the dumpster was on plaintiffs' property while the other half was on defendants' property. And although there was conflicting testimony offered by Ennis-Decker and Kevin regarding how long the dumpster had been located on the north side of the building on Parcel A, the trial court was in the best position to resolve those conflicts and determine credibility. See *Chelsea*, 288 Mich App at 251.

## C. ACTUAL AND VISIBLE

Defendants argue that plaintiffs failed to prove that their possession was actual and visible. We disagree.

An individual "claiming title by adverse possession must show positive and affirmative acts of ownership." *Barley v Fisher*, 267 Mich 450, 453; 255 NW 223 (1934). In this case, the evidence presented at trial clearly and cogently established that plaintiffs' possession was actual and visible. Harvey testified that when he owned Parcel A, he recognized the tree line of the vacant wooded lot to the north as the property line that separated the two properties. Harvey further testified that as part of the construction of the building on Parcel A, a gravel parking lot was also added to the property. Harvey explained that there was a "south drive" and a "northern drive," and "the northern drive would've been part of the north line of the property." The north drive

-6-

contained steel posts, and Harvey considered the northern line to be just north of the northern post. Additionally, Harvey testified that he and Fisher mowed the property up to the northern line.

Ennis-Decker's testimony indicated that she continued to use the north drive in a similar manner as Harvey. Ennis-Decker testified that she, her patients, and her employees used the north drive since 2001 to enter and exit Parcel A. Additionally, Ennis-Decker testified that the snow was always plowed "over to the wood line." Aside from the use of the north drive as an entrance and exit, Ennis-Decker's testimony, and photographs of the property from 2001, showed that part of the Parcel A parking lot had been located in the north drive area since at least 2001 when plaintiffs bought the property. Furthermore, the survey that Ennis-Decker obtained revealed that her dumpster was partially on defendants' property and partially on plaintiffs' property.

Regarding the septic tank and septic field, Harvey testified that he built the building on Parcel A "around '92," and the construction of the building and the installation of the septic "was all part of the permit process." Although Ennis-Decker did not know where her septic tank was located for some time after she purchased the property, Kevin testified that he knew where Ennis-Decker's septic field was located when he bought the wooded lot. Therefore, plaintiffs' testimony and evidence demonstrated positive and affirmative acts of ownership because plaintiffs' parking lot, septic field, and dumpster were located, at least in part, in the north drive. See *id*. Furthermore, plaintiffs used the north drive as an entrance and exit to Parcel A. Accordingly, plaintiffs' possession was actual and visible.

Accordingly, the trial court did not clearly err by finding that plaintiffs had established the necessary elements of an adverse-possession claim.

## IV. ACQUIESCENCE

Defendants argue that the trial court erred by finding that plaintiffs were entitled to the north drive under a theory of acquiescence because plaintiffs did not possess the property for the 15-year statutory period and failed to show that they used the septic tank as a boundary or as part of their property. We disagree.

"Under Michigan law, parties may acquiesce to a new property boundary line." *Houston*, 335 Mich App at 567. "[A]cquiescence is established when a preponderance of the evidence establishes that the parties treated a particular boundary line as the property line." *Id*. (quotation marks and citation omitted). "The three theories of acquiescence include: (1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to deed to a marked boundary." *Id*. (quotation marks and citation omitted). In this case, the parties agree that the first theory is at issue.

The statutory period for acquiring property by acquiescence is 15 years. *Id*. at 567-568; see also MCL 600.5801(4). "A claim of acquiescence for the statutory period requires a showing that the property owners treated a boundary line or marker as the property line for 15 years." *Houston*, 335 Mich App at 568. Furthermore, "[o]ur Supreme Court has repeatedly held that a boundary line long acquiesced in and treated as the true line should not be disturbed on the basis of new surveys." *Id*.

"The acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years." *Id*. (quotation marks and citation omitted). "Proof of privity is not necessary . . . ." *Id*. (quotation marks and citation omitted). "[T]herefore, when successive neighboring landowners use the property as marked by monuments . . . as if the monuments were accurate, for a period of 15 years, they have fixed the property line by acquiescence." *Id*. (quotation marks and citation omitted; ellipsis in *Houston*). "Unlike adverse possession, a claim of acquiescence does not require that possession of the land was hostile or without permission." *Id*. The question of acquiescence becomes important "[o]nly when there has been some agreement, whether tacit or overt, as to the location of the boundary." *Id*. (quotation marks and citation omitted; alteration in *Houston*). "The underlying reason for the rule of acquiescence is the promotion of peaceful resolution of boundary disputes." *Id*. (quotation marks and citation omitted).

In this case, the dispute involves a strip of land—the north drive—that is situated at the borderline of plaintiffs' Parcel A and defendants' wooded lot. And although privity is not necessary for plaintiffs to tack on the possessory periods of their predecessors, as discussed above, privity was established between plaintiffs and their predecessors. Therefore, the period of acquiescence started in 1992 when plaintiffs' predecessor, Harvey, treated the wood line of the wooded lot as the boundary. Indeed, Harvey testified that when he owned Parcel A, he and Minekey, the owner of the wooded lot to the north, considered the boundary line to be along the tree line of the wooded lot. Ennis-Decker's testimony indicated she similarly treated the tree line of the wooded lot as the boundary because she testified that she plowed snow "over to the wood line," and she mowed the north drive. Their testimony also showed that they viewed the wood line as the boundary because they both used the north drive as an entrance or exit to Parcel A, the parking lot extended into the north drive, and the septic tank and septic field were placed, either in whole or in part, in the north drive area. Kevin even testified that he knew where the septic field was located when he bought the wooded lot in August 2007. Yet Kevin did not confront plaintiffs about the placement of the septic field or attempt to stop plaintiffs' use of the north drive until he brought it to Ennis-Decker's attention in 2019. Accordingly, plaintiffs acquired the disputed property by acquiescence because they and their predecessors actively used the north drive since approximately 1992, and defendants did nothing to stop the usage. See *Killips*, 244 Mich App at 259-261.

Affirmed.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly